## W. N. PASS *v.* GRENADA COUNTY ET AL.

1. COUNTY TREASURER.   *Surety.   Payment under mistake of law.   Recovery back.*

    Where a county treasurer who has given no bond to cover school-funds, as
    required, is in default, and the sureties on his general bond, erroneously
    supposing themselves liable for school-funds, under threat of suit, in
    settlement with the board of supervisors, make payment of an amount
    which they know is less than the entire default, knowing, too, that the
    board is ignorant of the fact that it is less, on ascertaining that the gen-
    eral ·bond was not a security for the school-funds, they cannot, on the
    ground of mistake or coercion, recover from the county the amount
    paid by them in excess of the default as to the general funds.

2. SAME.   *Satisfying obligation.   Right of recovery.*

    In such case, as the sureties were liable to judgment for double the default
    in respect to the general funds, and, as such judgment would have ex-
    ceeded the full amount paid by them, they cannot complain of having
    paid too much.   And, the amount paid by the sureties being equal to
    that for which they were liable on the general bond, the county can re-
    cover no more from them because of the default.

3. CONTRIBUTION.   *Statute of limitations.   Runs from date of payment.*

    The right of a surety to contribution arises on *payment*, which discharges
    the sureties, and the statute of limitations in favor of a co-surety as
    against contribution runs from that time, and not from the accrual of
    the right of action on the original obligation.

FROM the chancery, court of Grenada county.
HON. B. T. KIMBROUGH, Chancellor.

*Edward Mayes*, for Pass, appellant, and cross-appellee,

Filed a very lengthy brief, discussing the various matters
involved in the appeal and cross-appeal, as to the questions
decided by the court, making the following points:

The county treasurer's general bond was not a security
for school-funds.   *State* v. *Mayes*, 54 Miss., 417; *State* v. *Fel-
ton*, 59 *Ib.*, 402; *Lafayette County* v. *Hall*, 68 *Ib.*, 719.

The argument for cross-appellant that, since the money has been paid under the belief that all funds were covered by the general bond, the purpose of a reformation having been secured, there can be no discrimination of the accounting, rests upon a fundamental misconception of the case of *Hall* v. *State*, 69 Miss., 529. The so-called cross-bill clearly falls within the reservation made by this court in the Hall case as follows : " Equity will not make contracts for parties. Its power is confined to those made by the parties. And where parties, through erroneous views of the law, reject one sort of contract and make another, led thereto by a mistaken opinion of the law, as in *Hunt* v. *Rousmanier*, 1 Pet., 1, equity will not relieve."

The court was right in dismissing the sureties on the first bond because of the bar of the statute of limitations. Under the code of 1880, the statute ran against the county. Section 104, constitution 1890, did not prevent the bar of the statute, because that section did not become operative until April 2, 1892, and the bar had then become complete.

The filing of the cross-bill did not stop the running of the statute, because it averred that there was no liability on the first bond.

One who voluntarily pays money which he does not owe cannot recover it. If he pays with knowledge of all the material facts, without fraud or duress, and when he is on an equal footing with the other party, the payment is voluntary ; but, if he pay under protest, except where the payment is voluntary *in fact*, he may recover, although the facts may not amount to compulsion. Pass paid under compulsion and under protest, with reservation of all his rights.

There was moral duress. The threatened suit was one which, if brought, might subject the defendants to a penalty equal to the shortage. The parties were not on an equal footing. The board in its demand had all the power and nothing to lose if its demands should not be upheld, while complainant had every thing to lose if he made a mis-

taken resistance. On this point, see 35 Miss., 189; 51 *Ib.,* 27; 56 *Ib.*, 530, 533; 111 U. S., 22. We call the attention of the court especially to the case of *Transportation Co.* v. *Sweetzer*, 25 W. Va., 434.

The extent to which the authorities go is, that where two parties are on equal footing, and one makes payment, knowing his legal right to refuse, and when he might just as well litigate to begin with as afterwards, a protest will not deprive the payment of its voluntary character. As an illustration, see *Cook* v. *Boston*, 9 Allen, which is directly opposed to *Leonard* v. *Canton*, 35 Miss., 189. The more liberal view in respect to payments under protest has always obtained in this state. 56 Miss., 72; 69 *Ib.*, 63. See also 20 Pa. St., 421; 10 Pet., 150; 1 Ohio St., 274.

There was no evidence of any shortage in the school-fund to which the payment of $1,750 made by the sureties could be applied. The burden was on the county to show that there was such shortage. 6 Rob. (La.), 475; 20 Ala., 313.

Appellant's second assignment of error, to the effect that the court erred in dismissing the sureties on the first bond, was only put in as precautionary. Except in regard to the item of $1,750, appellant is content with the decree as it stands. If, however, it shall be held that the court below erred in refusing to allow a recovery on the first bond, or any decree that the payment made by Pass was made wholly on the second bond, and that the sureties on the first were not liable to contribute, then we wish the matter in such shape as that the sureties on the first bond shall be still before the court and subject to further proceedings.

The collection from the sureties was not made on a general shortage. All parties *at that time* considered that the settlement for the first term was full and complete. The demand of the county from the sureties on the second bond was *specific*, for a shortage on that bond alone.

This is a question between the county and *all of the sureties on the first bond*. Except Pass, they had paid nothing,

and they were dismissed on their objection. If now, when it appears that the county had extorted an overpayment from Pass and his co-sureties for the second term, the county is allowed to retain that overpayment because it appears at this stage that there was a shortage on the first bond, the result would be that the county would thereby have deprived Pass of his remedy for a contribution of his co-sureties on the first bond. In response to a demand for contribution, they will be prompt to say that he never paid any thing on that liability, and that they are protected by the statute of limitations. Having put the matter in the attitude that Pass can get no contribution from his co-sureties on the first bond, the county is estopped to claim a right to apply this excessive collection on the second bond to that liability.

*R. Horton,* for Grenada county, appellee and cross-appellant,

Filed an elaborate brief, as to the controlling questions, making substantially the following points :

Under no circumstances can one paying money voluntarily recover it. Knowledge by Pass of a further shortage of two thousand dollars than that reported was the inducing cause of his paying the money. This, and not the order of the board of supervisors to bring suit, was the *causa causans* of the payment. Pass and the other sureties were under the belief that they were liable for school-funds as well as others, and their purpose in paying was to discharge Gordon's entire liability to the county. They simply made a mistake of law. Money paid under such a mistake cannot be reclaimed. Doug., 468, 471; 2 East, 469; 12 *Ib.*, 38; 5 Taunt, 144; 1 Wend., 185, 355; 7 Hill (N. Y.), 159; 19 Am. Dec., 473, 508, 514; 32 *Ib.*, 132; 15 Me., 45; 51 *Ib.*, 140; 64 Pa. St., 383; 10 Pet., 137; 12 *Ib.*, 32; 4 Wait's Ac. & Def., p. 486, § 12, and authorities cited.

No advantage was taken of Pass and the other sureties when the payment was made. On the contrary, they knew

facts that the board did not know, and counted themselves happy that they had made by salvage two thousand dollars.

Mere commencement of a suit or threat thereof is not compulsion. The defendant cannot neglect to make defense, and, after payment, sue to reclaim the money. 4 Gill., 425; 45 Am. Dec., 145; 1 Blackf., 321; 4 *Ib.*, 356; 5 Cush., 115; 7 *Ib.*, 125; 21 Iowa, 338; 26 Cal., 606; 4 Wait's Ac. & Def., p. 488, § 14, and authorities cited; 55 Ind., 14; 72 *Ib.*, 336; 115 Mass., 367; 61 Me., 227; 33 Mo., 412, 575; 52 *Ib.*, 170; 67 N. C., 374; 31 Pa. St., 73; 24 Am. Dec., 274. The payment must have been made under compulsion. It must be shown that the payment was not merely an *unwilling* one, but compulsory, and the complusion must have been illegal, unjust or oppressive. 45 Am. Dec., 153, note; 21 Iowa, 338.

As to what is duress or compulsion, see 6 Smed. & M., 13; 19 Pick., 7; 23 *Ib.*, 167; 11 Cush., 57; 9 Allen, 393; 15 Gray, 48; 106 Mass., 1; 115 *Ib.*, 367; 19 Am. R., 367; 26 *Ib.*, 624; 10 How. (U. S.), 242; 95 U. S., 210.

As to the effect of paying under protest, see Lawson on Con., § 48; 17 Pick., 134; 7 Cush., 125; 126 Mass., 485; 3 Am. Dec., 745; 24 *Ib.*, 274; 54 *Ib.*, 716; 70 *Ib.*, 655; 22 Am. R., 512; 30 *Ib.*, 689.

As to what is a voluntary payment, see Lawson on Con., 46; 10 Pet., 137; 19 Am. Dec., 273; 27 *Ib.*, 488; 31 *Ib.*, 617; 32 *Ib.*, 133; 44 *Ib.*, 580; 45 *Ib.*, 621, 739; 72 *Ib.*, 724; 75 *Ib.*, 479; 79 *Ib.*, 176; 89 *Ib.*, 579; 4 Am. St. R., 606; 56 Miss., 72, 532; 59 *Ib.*, 385.

To recover money paid under compulsion, the form of action is for money had and received, which is an equitable action. 2 Burr., 1009; 45 Am. Dec., 154, note; 18 Cal., 265; 10 How. (U. S.), 242; 95 U. S., 210.

There is a vast difference between the legal principles involved and those which would have been involved in an action by Grenada county on the general bond, so far as the school-funds are concerned. On this point, we refer to *Vicksburg* v. *Butler*, 56 Miss., 72; *Tupelo* v. *Beard*, 56 *Ib.*, 532.

Pass is surety on both bonds, and, whatever may be decided as to the other sureties, the statute of limitations will not avail him.

No reformation of the bonds is needed to protect the rights of the county in making its defense in respect to the school-fund, and the court erred in not considering this fund.

*Ro. H. Golliday,* for sureties, Williams *et al.*

Argued orally by *Edward Mayes,* for appellant, Pass.

COOPER, J., delivered the opinion of the court.

One B. H. Gordon was elected to the office of treasurer of Grenada county for the term beginning on the first Monday of January, A.D. 1884, and ending on the first Monday of January, A.D. 1886; he was also elected as his own successor for the term beginning at the latter date and ending on the first Monday of January, 1888. He executed his general bond as treasurer for both terms, and the appellant, Pass, was surety upon each. Neither the board of supervisors nor Gordon and his sureties knew that the law (Code of 1880, § 726) required the treasurer to execute a special bond for the security of the school-funds, and none was given for either term. All concerned supposed that the bond actually given would serve as security of all the funds, school and general, which might come into the hands of the treasurer. It appears now that Gordon had embezzled a part of the general fund and of the school-fund during his first term of office, but he succeeded in concealing that fact from the county authorities, and pretending to have more cash on hand than he in truth had. His accounts for the first term were audited, and he entered upon his second term a real but not a known defaulter. At the expiration of his second term another person was elected as treasurer, and Gordon, being unable to further use a simulated cash balance as a real one, his default became known.

Upon discovery of the delinquency, the board of supervisors caused the books, accounts and vouchers of the treasurer to be examined by an expert, Mr. McLeod, whose report showed that Gordon was then in default in the sum of $5,810.16.   In making this account, no distinction was drawn between the general funds of the county and the school-fund, but Gordon was charged with all moneys that came into his hands, and credited with all disbursements he had made.   The report of McLeod having been examined by the board of supervisors, it made an order at its July term, 1888, that Gordon should at once pay over to his successor the amount found due. The sureties upon the bond of Gordon for his second term, believing that some mistake had been made in the statement of the account, employed Wirt Adams, who had formerly been revenue agent of the state, to re-examine the accounts, and on the eleventh day of August an arrangement seems to have been made between the board of supervisors and the sureties for a suspension of proceedings until Adams could make his examination.   The record in the cause is not well made, and there is no note of evidence made by the chancellor, but there appears in the record an instrument of writing, presumably from the minutes of the board of supervisors, reciting that the sureties believed mistakes existed in the account, and that Adams was then at work to make a fair statement of the same.   Wherefore it "is agreed and understood that the sureties of Gordon deposit in the Merchants' Bank of Grenada the sum of $5,810.16, in the hands of John Powell, as trustee for the county, there to remain until the —— Monday in September, 1888, at which time the statements of McLeod and Adams are to be carefully compared by them and the board, and if any mistakes in favor of Gordon are found in the statement of McLeod, then said trustee is to pay over to Grenada county less said mistake, and if any mistakes are found in favor of the county, the said sureties are to make the same good to the county, and, further, that if said deposit is not made to-day, and said agreement complied with,

suit is to be brought immediately by the district attorney as required by law." Whether this deposit was made does not appear, but so it was that the examination of Adams disclosed the fact that Gordon was defaulter for some two or three thousand dollars more than McLeod had reported.

. Mr. Adams testifies that he was employed by the sureties of the treasurer. He states that "it was a private examination, as I understood it; it was made in the interest of Mr. Gordon and the bondsmen alone. and my report as to the result of my examination was made to Mr. Pass and those sureties present in the office of Judge Roan, and the report itself was afterwards handed to Mr. Pass. As I understood it at the time, the county, through its board of supervisors, had employed Mr. McLeod to examine for it." On the third day of September an order was made by the board of supervisors reciting that it appeared from the report of McLeod that Gordon was indebted to the county of Grenada in the sum of $5,810.16, as treasurer of said county, and directed that he and his sureties should forthwith pay said sum into the treasury of said county, and, in default thereof, that the district attorney should immediately enter suit upon his official bond for said amount, and all damages and penalties allowed by law. Under this order the sureties upon the bond of Gordon for his second term, including the appellant, Pass, who was also one of the sureties upon the bond for the first term, paid into the county treasury the sum of $5,810.16, of which sum Pass paid $4,485.16, and thereupon the board of supervisors caused an order to be made directing its clerk, as county auditor, to balance all accounts on his books against said treasurer as final and absolute. It appears from the evidence that this settlement was made by the board in ignorance of the fact that the account made by Adams, in the interest of the sureties, showed a larger balance against the treasurer. The clerk of the board testifies that "the board had no knowledge of what Mr. Adams' statement was."

There were many sureties upon the bond of the treasurer

for the second term, and this proceeding was commenced by Pass, who had paid more than his share of the bond, against the other sureties thereon, to compel contribution from them. Some of the defendants to the original bill answered, denying that the treasurer had made any default whatever. They further stated that, if, in fact, there was a default, it arose during the *first* term, and not the second, and, therefore, that Pass, if entitled to contribution at all, must seek it against those who were sureties with him on the bond of the treasurer for the first term.

Pass then exhibited an amended and supplemental bill against the county of Grenada and the sureties on both bonds. He averred 'that, if the default was during the first term, he was entitled to contribution from his co-sureties during that term; if the default was during the second term, he was entitled to contribution from his co-sureties on the bond for that term; and if, in truth, there was no default, then, that he was entitled to recover back from the county of Grenada the sum he had paid, which payment he alleged had been made by him under coercion by the board, and which was made by him and received by the board under protest by him, by which all his rights were reserved. The county of Grenada answered this amended and supplemental bill, averring that there was no default by Gordon during his first term, but that the default arose during the second term. It denied that the payment made by Pass and others was coerced by the board, or that such payment was made or received under protest, but averred that it was made and received as a final and absolute discharge of the indebtedness of the treasurer, whatever it might be; but that since Pass, by his bill, repudiated the settlement, the board set up, by way of cross-bill, that the default was, in fact, $7,890.89, instead of $5,810.16, and, for the difference between said sums, the board demanded a decree against Pass and the other sureties on the second bond.

The court referred the account to a commissioner, with in-

structions to separate the two terms, and make and state an account as to each; and that in such accounting no charges or allowances should be made against or in favor of the treasurer, except as to the general funds of the county. This order of reference is the first intimation of a recognition of the fact that neither of the bonds were security for the school-funds of the county. For although it had been decided by this court in the year 1877, in the case of the *State* v. *Mayes*, that there was no liability upon the general bond of the county treasurer for the school-funds, and, though the statute construed in that case had existed since the code of 1871 was adopted, the county authorities were all proceeding in blind and inexcusable ignorance of the law. The report of the commissioner showed that, as to the general county fund, Gordon was a defaulter during his first term in the sum of $2,680.44, and in the second term in the sum of $2,928.04.

When this report was made, the county of Grenada asked leave to file a supplemental answer and cross-bill, which was denied. By this cross-bill it was sought to fix liability upon both bonds for the school-funds of the county by a reformation of the bonds. It is sufficient to say, in reference to this matter, that the action of the court was correct; the effort was to bring this case within the control of the decision in *Lafayette County* v. *Hall*, 70 Miss., 678, but the facts alleged were insufficient.

On final hearing, the court held: 1. That the payment made by Pass and others was as upon a default for the second term of Gordon, the treasurer; that the payment was not a voluntary one, and, since the amount paid was in excess of what the county had a right to enforce as against the sureties on the bond of Gordon for that term, the county should repay to the sureties such excess. 2. That the sureties on the first bond were protected by the statute of limitations against any liability on that bond.

The county and Mr. Pass appeal from this decree. There

are assignments of error touching other subordinate matters decided by the chancellor, but they are all rendered immaterial by the decision of the main points, and need not be noticed. We fail to find any support in the evidence for the decree of the court below.   It is entirely certain that Gordon, during his two terms of office, embezzled more money of the general fund and the school-fund than the county has received, and it is equally certain that, when the settlement was made, the county authorities and the sureties supposed that the entire default had arisen during the second term, and that the sureties on the general bond were liable not only for the general fund, but also for the school-fund.   More than this may be said, in the light of the facts developed in this cause.   The county authorities had caused the accounts to be examined, and the accountant employed by them had reported a deficiency of $5,810.16.   This amount the sureties were unwilling then to pay, and, to verify the account of the treasurer, they employed Mr. Adams to make for them a private examination of the accounts of the officer.   By agreement with the board of supervisors, it was stipulated that they should deposit in bank and with a gentleman named as trustee, the amount found to be due by McLeod, the accountant of the board, and that when Adams should complete his examination, the balance found due by Mc-Leod should be enlarged or diminished according as the facts should be made to appear.   But, unexpectedly to the sureties, Adams' examination disclosed that the whole default of Gordon exceeded the amount found due by McLeod by over $2,000.   This fact was not disclosed to the board, but was privately reported by Adams to the sureties of the delinquent officer, who, concealing the fact that an additional deficiency had been discovered, closed with the demand of the board for the payment of the sum found due by McLeod. There was no mistake of fact by the sureties, other than that the default occurred partly in one term and partly in another; and as to Pass, the actor in this suit, this was im-

material, because he was surety on both bonds. They knew
the facts more accurately than the board of supervisors, from
whom the disclosures made by Adams were withheld, and un-
doubtedly withheld for the purpose, by Pass and his co-sure-
ties, of securing a settlement of their liability for a less sum
than they believed to be due. The averment now made that
the payment was coerced by the board and made under pro-
test, finds no support in the evidence as a real coercion or a
genuine protest made in good faith by parties who believed
they were paying more than could lawfully be demanded of
them. The very truth is, that the sureties believed they
were discharging their obligation by the payment of a less
sum than that for which payment might be enforced. The
mistake was one of law, in assuming that the effect of the
general bond was to secure the school-funds as well as the
general fund of the county. In truth, the sum paid by the
sureties is less than the county would have recovered by suit
on the bonds on which Pass was surety, for, by suit, a re-
covery would have been for double the amount embezzled
by the treasurer. Code 1880, § 375.

The appellant, Pass, in the light of the proved facts, does
not occupy a position to commend him to a court of equity
for relief. He withheld from the county authorities facts
known to him, and which it was then supposed made the
sureties on the bond liable for a much larger sum than the
board of supervisors was demanding. He has since discovered
that, though these facts might exist, yet by law their liability
was less. The payment made under these circumstances
cannot be recovered back, and the chancellor should have
denied all relief against the county.

The county, having received an amount equal to that for
which the sureties on the general bond were bound, can have
no further relief. It suffers because of the inefficiency of its
board of supervisors, which failed to inform itself of the law
requiring a bond from the treasurer for its school-fund, and
because of the dishonesty of that treasurer.

The sureties on the first bond are not protected by the statute of limitations. The right of Pass to seek contribution arose upon payment by him of the money, which payment operated to discharge them from an action by the county. This payment was made September 3, 1888, and his bill against them was exhibited October 20, 1890.

*The decree is reversed, and cause remanded.*