SCHMITTLER *v.* SUNFLOWER COUNTY.

(Division A. Jan. 13, 1930.)

[125 So. 534. No. 28302.]

228

(Division A. Feb. 10, 1930.  Suggestion of Error Overruled.)

[126 So. 39.  No. 28302.]

For former opinion, see 125 So. 534.

**Allen & Allen**, of Indianola, for appellant.

**Chapman, Moody & Johnson**, of Indianola, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellant, Fred Schmittler, filed this suit against Sunflower county, seeking to recover certain sums alleged to have been wrongfully collected from him and certain other persons who had assigned to him their claims against the county, for the privilege of seining or netting for fish in the bayous, lakes, and streams of Sunflower county; and, from a directed verdict in favor of the county, this appeal was prosecuted.

The declaration, as finally amended, alleged that the appellant and his assignors were all resident citizens of Sunflower county, and that they had each been required to pay out and expend, at the instance of the sheriff of said county, for privilege licenses that were not due, and which were unlawfully exacted and collected, and were paid involuntary under duress and compulsion, certain named amounts for permission to seine and net for fish in said county; that the funds so collected by the sheriff

of said county were paid into the bird, game, and fish fund of said county under and by virtue of section 5385, Hemingway's 1927 Code; that the parties named in the declaration, as having been unlawfully required to pay such privilege taxes, except the appellant, had, for a valuable consideration, assigned their claims for a return thereof to the appellant; and that such claims had been filed with, and disallowed by, the board of supervisors. As exhibits to the declaration, there were filed the privilege licenses issued to the appellant and his various assignors, the written assignments to appellant, and a copy of the order of the board of supervisors disallowing the claims.

To this declaration the appellee filed a plea of the general issue, and a special plea averring that all items sued for, except those alleged to have accrued during the years 1926, 1927, and 1928, were barred by the three-year statute of limitation, and also a special plea averring that the appellant and each of his assignors voluntarily made applications for privilege licenses for seining, or using a fish net in said county, and agreed to pay the privilege taxes required, and did, without any request, demand, or threat from the sheriff of said county, and without any protest or objection on their part, and without compulsion by the sheriff or other officer, pay the privilege taxes, the return of which was sued for. To these two special pleas demurrers were interposed and sustained, and the cause proceeded to trial upon the declaration and the plea of the general issue.

The evidence shows that, during the years 1923 to 1928, there was in force in Sunflower county an ordinance or order of the board of supervisors prohibiting the use of seines, barrel nets, or other contrivances for taking fish from any bayou, lake, or stream not wholly on the lands of one person, and from the Sunflower river within one mile from where any bayou, lake, or other stream empties into it, and from putting fish traps in any bayou, lake, or river of said county, without first obtaining a special permit or license so to do from the

board of supervisors of the county, and the payment of the fees fixed thereby for the issuance of such license or permit, and fixing a penalty for the violation of any provision of said order or ordinance. It was further shown that, in compliance with these regulations or orders of the board of supervisors, the appellant and his several assignors made applications for licenses to seine in the bayous, lakes, and streams of the county, and thereupon licenses so to do were issued to them by the sheriff and tax collector of said county, upon the payment to him of the amounts fixed and required for that purpose by such orders of the board of supervisors. The amount so paid to the sheriff for such license was shown partly by oral testimony and partly by a record kept in the sheriff's office, known as "Hunter's and Seiner's Cash Book," and the proof further shows that all of the amounts alleged to have been paid to the sheriff for licenses were voluntarily paid without protest or objection, and without demand or compulsion by the sheriff or other officers.

There are several questions presented by this record which are argued at length by counsel, among others being the question of whether or not the board of supervisors has the power, under the law, to require residents of the county to pay a tax or license fee for the privilege of seining or netting for fish in the waters and streams of the county. It will, however, be unnecessary for us to pass upon that question, in view of the fact that we have reached the conclusion that this case may properly be disposed of by the decision of the question of whether or not a person who voluntarily, and without protest or objection, pays such taxes or license fees, may recover the same from the county.

It is the settled law of this state that, in the absence of a statute providing otherwise, taxes or license fees voluntarily paid without protest cannot be recovered, although assessed and collected without legal authority. It was so held in the case of Union Land & Timber Co. v. Pearl River County, 141 Miss. 131, 106 So. 277, while

in the case of Pearl River County v. Lacey Lumber Co., 124 Miss. 85, 86 So. 755, it was held that a general pro- test was sufficient where the assessment of the tax was void on its face, but, if the infirmity in the assessment was caused by a failure to do a particular thing, or re- sulted from facts not apparent of record, the protest must be special and call attention to the defect.

The appellant contends, however, that this rule was changed in this state by the enactment of chapter 195, Laws of 1926 (section 8273, Hemingway's 1927 Code), which reads as follows:

"If any person, firm, or corporation has paid, or shall hereafter pay, to the auditor of public accounts, or to any tax collector in the state, through error or other- wise, any privilege tax for which such person, firm or corporation was not liable, or if any person, firm or corporation has so paid for any privilege license an amount exceeding the sum for which such person, firm or corporation are liable, upon proof that such erro- neous payment or overpayment has been paid into the state treasury, he shall, with the advice and approval of the governor and attorney-general, issue to such per- son, firm or corporation, his or their assigns, his war- rant upon the state treasurer for an amount equal to such erroneous payment or overpayment, and the same shall be paid by the state treasurer from any funds ap- propriated for such purpose; provided that it shall not be necessary in order to authorize such refund that the tax payment was made under protest or because of co- ercive measures taken on the part of the collecting of- ficer."

In order to evade the general rule with reference to the recovery of taxes and fines paid voluntarily, and with- out protest, by virtue of any statutory change therein, the appellant must bring his case within the provisions of the statute. The statute upon which appellant re- lies to relieve him of the necessity of protesting, in or- der to be permitted to recover the privilege taxes or fees alleged to have been collected without legal au-

thority, provides that, upon proof that any privilege taxes have been erroneously paid into the state treasury, the auditor of public accounts shall, with the advice and approval of the governor and the attorney-general, issue to the person, firm, or corporation entitled thereto his warrant upon the state treasurer for the sum so erroneously paid. In the case at bar, the proof shows that the taxes or fees collected from the appellant and his assignors were paid into the county bird, game, and fish fund, as provided by section 17, chapter 178, Laws of 1926 (section 5385, Hemingway's 1927 Code). With the refunding of erroneous payments into this special county fund the state auditor has nothing to do, and the provision of the statute that it shall not be necessary that the payment be made under protest or because of coercive measures, in order to authorize such refund, that is, a refund out of the state treasury by the state auditor, with the advice and approval of the governor and attorney-general, cannot be extended by construction to apply to a refund of license fees or privilege taxes paid into this special county fund. In the absence of a statute providing otherwise, the general rule that taxes or license fees paid voluntarily, and without protest, cannot be recovered, is applicable in the case at bar; consequently, the action of the court below in directing a verdict for the county was correct.

The court below sustained a demurrer to a special plea, setting up as a defense the fact that these privilege taxes or license fees had been paid voluntarily and without protest. The question of voluntary payment may be raised, however, under the plea of general issue, because the plaintiff must allege and prove that the payment of the tax was involuntary on his part, and, as said in 37 Cyc., p. 1179(b), "a payment is voluntary, in the sense that no action lies to recover back the amount not only where it is made willingly and without objection; but in all cases where there is no compulsion or duress nor any necessity of making the payment as

a means of freeing the person or property from legal restraint or the grasp of legal process."

The judgment of the court below will be affirmed.

Affirmed.

### On Suggestion of Error.

**Cook, J.,** delivered the opinion of the court on the suggestion of error.

The appellant has filed a suggestion of error in this cause, in which he points out that in the original opinion we erroneously quoted' and discussed chapter 195, Laws of 1926 (section 8273, Hemingway's 1927 Code), as being the statute upon which he relied to relieve him of the necessity of showing an involuntary payment of taxes in order to be entitled to recover the same by a suit against the county, while as a matter of fact he relied upon a similar statute appearing as chapter 196, Laws of 1926 (section 8270, Hemingway's 1927 Code).

Chapter 196, Laws 1926 (section 8270, Hemingway's 1927 Code), provides, in part, that: "The auditor of public accounts is hereby authorized and required to make a careful investigation of all claims presented for moneys paid for ad valorem or privilege taxes not due, . . . or if he shall find that any taxes or moneys have been, or may hereafter be, erroneously paid therefor into the treasury of the state, county, or levee boards, he shall audit such claims against each separate fund in proportion to the amount paid over to such fund in each case, and he shall submit such audited claim with the voucher and evidence on which such claim is based, to the attorney-general for his inspection and approval, and if the attorney-general be of the opinion that such claims should be paid he shall approve the same, and the auditor shall thereupon file such voucher and other papers necessary in each case, in his office, as a voucher, and issue his warrant on the state treasury in favor of the claimant, for the amount of purchase-money or taxes

erroneously paid into the state treasury, and the auditor shall audit the amount of taxes paid the county and levee boards, as the case may be, and shall certify the amounts found to be due to the clerk of the board of supervisors and secretary of the levee board, and the said board of supervisors, or levee board, shall cause the warrant to be issued on the treasurer of the county, or levee board, in favor of the claimant, as certified by the auditor of public accounts, as the case may be, . . . provided, that it shall not be necessary in order to authorize such refunds that the tax payment was made under protest or because of coercive measures taken on the part of the collecting officers. . . ."

Chapter 195, Laws of 1926 (section 8273, Hemingway's 1927 Code), deals with privilege taxes erroneously paid into the state treasury, and chapter 196, Laws of 1926 (section 8270, Hemingway's 1927 Code), deals with both ad valorem and privilege taxes not due and erroneously paid into the treasury of the state, county, or levee board, and the methods provided by these two statutes for obtaining refunds of taxes erroneously paid are practically the same, and neither of them relieves a claimant of the necessity of showing an involuntary payment, or payment under protest, in the event he elects to proceed by direct action against the county to recover taxes alleged to have been erroneously paid. The proviso in each of these sections is that it shall not be necessary that the tax payment be made under protest to authorize such refunds, that is, refunds made upon, and as a result of, an audit and certificate of the auditor of public accounts, approved by the attorney-general; and this provision of the statute has no application to direct suits against the county for taxes erroneously paid into the county treasury. If, since the enactment of chapter 196, Laws of 1926 (section 8270, Hemingway's 1927 Code), a suit can be maintained against the county for a refund of taxes erroneously paid, which we do not decide, it can only be maintained upon a showing that the

payment was involuntary. The suggestion of error will therefore be overruled.

Suggestion of error overruled.