MᴄLᴇᴀɴ *et al. v.* Lᴏᴠᴇ *et al.*

(Division B.   Nov. 5, 1934.   Suggestion of Error overruled Dec. 3, 1934.)

[157 So. 361.   No. 31381.]

Thomas **S. Bratton**, of Jackson, for appellants.

**J. B. Hutton, Jr.,** of Jackson, for appellants.

**H. Chalmers Alexander**, of Jackson, for appellants.

Flowers, Brown & Hester and Green, Green & Jackson, all of Jackson, for appellees.

Argued orally by **H. C. Alexander, J. B. Hutton, Jr.,** and **Thos. S. Bratton,** for appellants, and by **Garner W. Green,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

On December 4, 1929, the Hiawatha Milling Company was indebted to the Merchants' Bank in the sum of fifty thousand dollars, for which a note was executed secured by collateral among which was eighty-eight thousand dollars of first mortgage bonds of a certain cotton oil company. On January 3, 1930, the milling company was indebted to the bank in an additional fifty thousand dollars, evidenced by a note and secured by the same collateral. In addition to the collateral mentioned, there were two separate contracts of guaranty by which appellants and eight others of the stockholders of the milling company bound themselves to pay the bank any balance of said notes after application thereto of the collateral above mentioned.

On January 31, 1930, the milling company borrowed from the bank fifteen thousand dollars, and on February 12, 1930, a further sum of ten thousand dollars. Both these loans were evidenced by notes and secured also by the said cotton oil company bonds, but were not guaranteed by the ten stockholders as were the two fifty thousand dollars notes. In March, 1930, the milling company was thrown into bankruptcy, and thereupon the bank demanded that the ten guarantors come forward and pay the entire of the balance due on the two fifty thousand dollar notes, which balance, including interest to April 5, 1930, amounted to seventy-nine thousand five hundred forty dollars and forty cents. None of the collateral above mentioned had been applied by the bank to the reduction of the stated balance, and the conduct of the bank at the time was such as to put the parties on notice or at least on guard that the bank expected to credit the collateral first and exclusively to the last two notes of fifteen thousand dollars and ten thousand dollars. In fact, by a letter by the bank to the guarantors dated March 28, 1930, and by a document tendered to the guarantors for

their signatures at the time of their respective payments, the aforesaid purpose of the bank was openly disclosed, and thus it is immaterial so far as this case is concerned whether the document last mentioned was signed by the guarantors or not. The guarantors, after this notice, paid, nevertheless, each his one-tenth part of the demanded full balance of seventy-nine thousand five hundred forty dollars and forty cents, including the two guarantors who are appellants here; and although it may be said that one of the appellants paid under what may be fairly said to be a protest on his part, he took no receipt reciting the acceptance of payment under protest; so that the fact that payment was unwillingly or protestingly made fades out of the picture so far as any legal effect is concerned (48 C. J., pp. 751, 752), even if a protest acknowledged by receipt could save the case, which here it probably would not (21 R. C. L. 149, and citations under note 20). Later the collateral, the cotton oil company bonds, were sold and brought twenty thousand dollars, and appellants now demand that there be returned to them each one-tenth of the last-mentioned amount; in other words, that the twenty thousand dollars brought by the collateral should be credited to the seventy-nine thousand five hundred forty dollars and forty cents, making that balance fifty-nine thousand five hundred forty dollars and forty cents, and that their respective payments in April, 1930, should have been five thousand nine hundred fifty-four dollars and four cents instead of seven thousand nine hundred fifty-four dollars and four cents, the sum then paid by each of appellants.

Accepting as correct the theory of appellants that in any event they were not liable for or due to pay more than five thousand nine hundred fifty-four dollars and four cents each instead of seven thousand nine hundred fifty-four dollars and four cents, we are unable to see how appellants are to escape the defense made by the bank,

among other defenses, that the payment was voluntary and is, therefore, not now recoverable. It is the general rule in this state (Union Land Co. v. Pearl River County, 141 Miss. 131, 106 So. 277; Menge & Sons v. Gulf & S. I. Railroad Co., 97 Miss. 810, 53 So. 424; Graham McNeil Co. v. Scarborough, 135 Miss. 59, 99 So. 502, 503), as elsewhere, that a voluntary payment cannot be recovered back; and a voluntary payment within the meaning of the rule is a payment made, without compulsion or fraud, and without any mistake of fact, of a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand (48 C. J., pp. 736, 756; 21 R. C. L., pp. 141-144), and when there has been no agreement between the parties at the time of payment, that any excess will be repaid (48 C. J., p. 741). And the stated rule applies to payments made by guarantors and sureties. 50 C. J., p. 238; 12 R. C. L., p. 1099; Seelbinder v. American Surety Co., 155 Miss. 21, 119 So. 357; Pass v. Granada County, 71 Miss. 426, 14 So. 447. Here the parties knew all or a sufficiency of the material facts. There was no agreement to repay; on the contrary, the parties knew or had knowledge of sufficient facts to put them on notice that the bank did not intend to repay; and the only compulsion suggested was a threat to sue, which is not compulsion, as was held in Pass v. Grenada County, supra.

Appellants seek to avoid the rule by the argument that they are not seeking to recover back a voluntary payment, but are demanding an accounting for, and a restitution of, the proceeds of the collateral improperly diverted by the bank subsequently to the payment by appellants. But we have already called attention to the fact that appellants knew, or should have known, at the time of payment that the bank intended to divert the collateral to the two subsequent notes held by it, instead of applying the

collateral first to the two notes which appellants had guaranteed, and, if the course of the bank in so doing was illegal or unjust, the duty of appellants was to effectively resist at the threshold and before making payment. 21 R. C. L., p. 143. If the bank had at the time said nothing whatever about what it expected to do with the collateral, a different case might, or might not, be presented.

There is no hardship in the rule in regard to voluntary payments; on the contrary, its foundation rests among the fundamentals of judicial procedure. This court in Graham McNeil Co. v. Scarborough, supra, says of it that, it "precludes the court being occupied in undoing the arrangements of parties, which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities." And we may add that the basic purpose of judicial courts, so far as civil cases are concerned, is to extend aid to those who have not been able by lawful means to aid themselves. Thus it is axiomatic in equity jurisprudence that a court of equity makes no exertion to extend relief to those who, being able to take care of their interests, have neglected to do so, and thereupon find themselves in predicaments which ordinary care would have avoided. And for the stronger reason, where an unjust demand has been made upon a party, a demand for a debt which he does not owe, or for more than he owes, he must, when he knows or ought to know the facts, avail of the means which the law affords him to resist the demand, and if he do not, and make the payment demanded, he has not taken due care. And to state the case here before us, when a party has been called on to pay a debt in full when he knows that there are credits, or collateral to be credited, which would reduce the amount of the debt or payment to be made, and without having the credits or collateral first applied, and doing

nothing to resist the demand by invoking his lawful remedy or defense, he makes the full payment, knowing or having notice that the other party does not intend to repay, he has placed himself voluntarily in a predicament from which he has no right to call upon a court to disentangle him, since, by standing upon his rights, he could have relieved himself. It is apparent from his written opinion that this was the view taken by the learned chancellor, and the decree will be affirmed.

Affirmed.