### Rowe v. Union Central Life Ins. Co.

(Division A. March 22, 1943.)

[12 So. (2d) 431. No. 35301.]

Breland & Lowrey and Vincent J. Brocato, all of Clarksdale, for appellant.

330

Wells, Wells, Lipscomb & Newman, of Jackson, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is an action at law brought by the appellant wherein she seeks to recover from the appellee a portion of the purchase price paid by her for certain Delta farm lands, livestock, and agricultural implements, purchased on October 9, 1933, under a special warranty deed. The suit is, therefore, not based upon a breach of warranty, but rather on the theory that fraud and deceit were practiced upon the grantee by an agent of the grantor at the time the negotiations were had which resulted in the sale, in that the quantity of the land was represented by such agent to be thirty-three acres more than that to which she obtained title under the deed; that is to say, the grantor did not own all of the land specifically described in the deed of conveyance, and which the agent claimed that the grantee would get under her purchase.

At the close of the plaintiff's evidence, there was a directed verdict in favor of the defendant in the court below, and we deem it sufficient to set forth in this opinion only such facts as are controlling on the issue upon which our decision is to be predicated, since in view of the conclusion reached on that issue it will be unnecessary to discuss or decide the other defenses relied upon by the appellee to sustain the verdict and judgment appealed from.

On the date aforesaid, the appellant, Mrs. Cora W. Rowe, who was then Mrs. Cora W. Murphree whose husband is now deceased, purchased from the appellee, the Union Central Life Insurance Company of Cincinnati, Ohio, three separate tracts of farm land in Bolivar county, consisting of the Clear Lake Farm, containing 881.25 acres, more or less, which the grantee and her husband had formerly owned and on which they then resided as lessees, and two other tracts which were described in the deed as if constituting only one body of land and containing 363.17 acres, more or less, the total area of land included in the sale purporting to contain 1244.42 acres

more or less; and, also all of the livestock and farming implements located thereon.

The deed of conveyance was executed pursuant to a written offer of purchase made by Mrs. Murphree on September 18, 1933, and duly accepted by the appellee insurance company on the same date. The total consideration agreed to be paid for the land, livestock, and farming implements amounted to the sum of $61,000, the land and the personal property not having been separately valued in arriving at the sale price. On this consideration the sum of $4,000 was paid in cash, the balance being payable in equal annual installments over a period of twenty years and secured by a deed of trust on all of said property, both real and personal.

Although that portion of the land described as containing an area of 363.17 acres was dealt with in the contract of sale and deed of conveyance as constituting a single tract, the proof disclosed that this particular area was comprised of what was known as the Keeler tract, comprising an area of 243.17 acres and adjoining the Clear Lake Farm, and also what was known as the Jennings tract, located less than a mile away, which was described in the deed as lots 34, 35, and 36 in Section 6, Township 24, Range 6 West, and which said lots, the grantee testified, were represented by the agent of the grantor to contain 120 acres, whereas it later came to the knowledge of the grantee that the grantor owned only a part of said lots 34 and 35, and the remainder thereof, constituting the thirty-three acres, being then owned by one Bob Campanova as per deed of conveyance to his predecessor in title, J. H. Stafford, executed in 1920, and duly appearing of record at the time of the conveyance of this land to Mrs. Murphree on October 9, 1933, as aforesaid.

It appears from the evidence that the thirty-three acres in lots 34 and 35 belonging to the said Bob Campanova were situated north of a cypress slough which runs almost diagonally across these two lots, and that he had been

in the actual possession and occupancy thereof for about two years prior to the conveyance by the appellee to Mrs. Murphree; that the Murphrees were the lessees of the said lots during the year, 1933, and cultivate such portions of the same as were cultivable and lying south of the said cypress slough; and that this was true at the time she obtained her deed thereto, although she was not then advised that a portion of said lots lay north of the said slough. Thus, we do not have before us a case where the agent of the grantor is alleged to have represented that the grantor of Mrs. Murphree owned any land north of the cypress slough, nor do we have a case where the grantee thought that she was acquiring any land north of this cypress slough, but rather a case where she was under the impression that all of said lots lay south of said slough and contained 120 acres.

It also appears that both the Keeler and Jennings tract of land aforesaid were formerly owned by one F. B. Keeler, now deceased, and that long prior to 1933, in a partition proceedings of the lands belonging to his estate, the whole of said lots, 34, 35, and 36 were allotted, among other lands, to his son, Charles D. Keeler, and were later sold under a deed of trust given by the said Charles D. Keeler and his wife to the appellee, the Union Central Life Insurance Company, notwithstanding that the father of the said Charles D. Keeler had long prior thereto conveyed the thirty-three acres lying north of the cypress slough in said lots 34 and 35 to the said J. H. Stafford by deed then duly appearing of record. And it is contended by the appellant that the said insurance company knew that it did not own this thirty-three acres of land at the time of its conveyance to the appellant, as further evidenced by a waiver executed by it during the early part of the year 1933 in favor of the Memphis Cotton Discount Corporation, in order to enable the Murphrees to obtain a crop loan for said year, and wherein the insurance company excepted from its waiver that portion of said lots 33 and 34 lying north of the cypress slough; and

it is further contended that, therefore, the agent of the insurance company was guilty of fraud and deceit in representing to the appellant that his company was conveying to her a title to all of lots 34, 35, and 36, containing 120 acres.

However, it further appears from the evidence that on December 2, 1936, the grantee, Mrs. Murphree, had the land surveyed, and discovered that the thirty-three acres lying north of the cypress slough and belonging to the said Bob Campanova were a part of said lots 34 and 35; that thereupon she requested of the grantor that an adjustment be made in the purchase price agreed upon for said land, so as to eliminate from her indebtedness to the grantor the sum of $1617 on account of the shortage of thirty-three acres in the area of 1,244.42 acres, and at the rate of $49 per acre; that after some negotiations the grantor, during the early part of the year, 1937, definitely declined to make such adjustment; that thereafter, on December 2, 1940, the grantee, Mrs. Murphree, after having met her annual installments when due in the years of 1937, 1938, and 1939, paid to the grantor the full amount of the remaining indebtedness, as represented by the then outstanding notes on the purchase price of said lands, at a time when no demand was being made for the immediate payment of the full amount still due, and at a time when no payments were in arrears thereon and when no foreclosure of the deed of trust securing the same was either being attempted or threatened.

It is true that in making such payment the grantee, in a letter written by her attorneys to the grantor, again reviewed the facts of the controversy in regard to the thirty-three acre shortage in the area of said land and stated that such portion of the money being paid as represented the purchase price of this much of the land, was "being paid under protest and without waiving any rights that the grantee may have to recover the same;" nevertheless, it is not contended that the payment was made under coercion, duress or compulsion at the

time it was made, or that any fraud was practiced on the grantee in the transaction relating to the receipt, acceptance or collection of the amount then paid. It is merely asserted that the payment was involuntary in the sense that the payee was advised that it was being paid under protest at a time when it held a deed of trust on the lands which could have been foreclosed upon default being made in any of the deferred payments thereby secured. It will be seen that the payment was made four years after the grantee had received notice and knowledge of the alleged fraud practiced on her by the agent of the grantor at the time of her purchase of said lands, and we are, therefore, of the opinion that the payment was voluntary and cannot be recovered. Tiffany v. Johnson, 27 Miss. 227, 5 Cushm. 227; Schmittler v. Sunflower County, 156 Miss. 227, 125 So. 534, 126 So. 39; McLean et al. v. Love et al., 172 Miss. 168, 157 So. 361, and cases therein cited; Elliott on Contracts, Vol. 2, Sec. 1391, p. 645.

In the case of McLean et al. v. Love et al., supra, the Hiawatha Milling Company was indebted to the Merchants Bank, at Jackson, in the sum of $100,000, represented by two notes of $50,000 each, secured by $88,000 of first-mortgage bonds of a certain cotton oil mill company. These two notes were also secured by contracts of guaranty by which the appellants and eight other of the stockholders in the milling company had "bound themselves to pay the bank any balance of said notes after application thereto of the collateral above mentioned." Thereafter, the milling company became indebted to the bank for two additional loans aggregating $25,000, which were also secured by the cotton oil company bonds, but were not guaranteed by the ten stockholders as were the two $50,000 notes. Thereafter the milling company became insolvent and the bank demanded that the ten guarantors come forward and pay the entire balance on the two $50,000 notes, then amounting to $79,540.40. The guarantors thereupon paid a one-tenth part each of this demanded balance, and the court held that "although it

may be said that one of the appellants [a guarantor] paid under what may be fairly said to be a protest on his part, he took no receipt reciting the acceptance of payment under protest; so that the fact that payment was unwillingly or protestingly made fades out of the picture so far as any legal effect is concerned (48 C. J., pp. 751, 752), even if a protest acknowledged by receipt could save the case, which here it probably would not (21 R. C. L. 149, and citations under note 20). Later the collateral, the cotton oil company bonds, were sold and brought $20,000, and appellants now demand that there be returned to them each one-tenth of the last-mentioned amount; in other words, that the $20,000 brought by the collateral should be credited to the $79,540.40, making that balance $59,540.40, and that their respective payments in April, 1930, should have been $5,954.04 instead of $7,954.04, the sum then paid by each of appellants.'' In the course of its opinion the court observed that at the time of making the payment, the guarantors had been put on notice, or at least on guard, that the bank expected to credit the collateral first and exclusively to the last two notes, aggregating $25,000 of additional loans. Likewise, in the case at bar, the appellant was put on notice in the early part of the year 1937, before making the payment on December 2, 1940, that the grantor, the appellee insurance company, intended to stand upon the deferred payment notes as they then existed, and intended to insist upon the collection of the entire balance of the purchase price of $61,000, as represented by the face of the notes, and it is shown that the payment of the full balance claimed was made on December 2, 1940, without any promise on the part of the payee to refund the same, or any part thereof. In the McLean case, supra, the guarantors were not obligated to pay anything except any balance on said notes after the application thereto of the collateral bonds. In the case at bar the grantee in the deed, according to her contention, was legally obligated to pay on December 2, 1940, only the

balance then represented by the outstanding and unpaid notes less the sum of $1,617, representing the purchase price of the thirty-three acres of land which the grantor did not own when it undertook to sell the same to the grantee. We deem it unnecessary to quote further from the opinion in the McLean case, but we rest the decision here upon the principles therein announced and on the authorities therein cited in support of the view it was the duty of the appellant to effectively resist, and before making the payment, the asserted right of the appellee to collect the full purchase price agreed upon and promised to be paid as a consideration in the deed of conveyance.

It is alleged, however, that the only remedy left open to the appellant, in order to obtain relief in an action at law, was by making the payment in full and to bring suit for its recovery. The mere fact, however, that she may have been compelled to resort to equity to obtain a surrender of the notes and a cancellation of the lien of the deed of trust securing the same, upon a tender of the correct amount admitted to be due, does not render her payment of the full amount an involuntary payment, and this is especially true where it was made at a time when payment of the full balance was not being demanded under penalty of immediate foreclosure, and at a time when no coercion, duress or compulsion was being employed to exact such payment, and where no fraud or concealment was being practiced by the payee in connection with the receipt, acceptance, and collection of any part of the sum so paid. All of the facts now relied upon by the appellant for a recovery of the sum sued for on the ground of alleged fraud and deceit in the sale in 1933 were fully known to her, according to her own testimony, long prior to December 2, 1940, as heretofore stated, and the mere statement in a letter that the payment was being made under protest does not render it an involuntary payment under the facts and circumstances in this case.

The judgment of the court below granting a directed verdict in favor of the appellee must, therefore, be affirmed.

Affirmed.