McDaniel Bros. Construction Company, Inc. *v.*
Burk-Hallman Company

No. 43534          May 31, 1965          175 So. 2d 603

*Young & Young, Pat Scanlon,* Jackson, for appellant.

*Overstreet, Kuykendall, Perry & Phillips,* Jackson; *Don G. Owens,* Memphis, Tenn., for appellee.

Gillespie, J.

McDaniel Bros. Construction Company, a Mississippi Corporation, sued Burk-Hallman Company, a Tennessee Corporation, to recover a sum of money. The suit was filed in chancery court because of an attachment feature. The case was tried before the chancellor on a stipulation of facts and a decree was entered dismissing the bill of complaint. McDaniel Bros. Construction Company, Inc., appealed to this Court.

McDaniel Bros. Construction Company, Inc., hereinafter called Prime Contractor, entered into a contract in 1961 with Coahoma County for the construction of a school building. Prime Contractor as principal entered into bond with proper sureties guaranteeing the payment of all persons supplying labor and material. Prime Contractor entered into a subcontract with Magnolia Paint & Wallpaper, a Mississippi Corporation, hereinafter called Subcontractor, whereby Subcontractor would

do the paint work on the school project for the sum of $23,650; said Subcontractor to furnish all labor and materials in fulfilling its contract for the paint work. On May 25, 1962, Prime Contractor received an instrument, dated May 17, 1962, executed by Subcontractor, directing Prime Contractor to pay the full contract price to become due Subcontractor to Burk-Hallman Company, herein called Assignee. Prime Contractor accepted the assignment by executing the same and returning it to Assignee.

At the time of the assignment, Subcontractor owed Assignee $10,561.48 for materials and supplies furnished Subcontractor on projects unrelated to the Coahoma County School job. Relying on the aforesaid assignment dated May 17, 1962, Assignee furnished materials and supplies and made cash advances to Subcontractor for the school project in an amount exceeding $10,000.00. Pursuant to its contract with Subcontractor, and in accordance with the assignment dated May 17, 1962, Prime Contractor made progress payments by checks payable jointly to Subcontractor and Assignee and sent the checks to Assignee. Three such payments were made totalling $20,000.00, which sums were received by Assignee and deposited to its bank account in the normal course of business, after being endorsed by Subcontractor or by the Assignee for the Subcontractor. The said sum of $20,000 was credited by Assignee to the account owed it by Subcontractor, which, with a return of some merchandise, balanced the account. Subcontractor defaulted and failed to complete its contract, and failed to pay some of its laborers and materialmen. Prime Contractor was required under the terms of the prime contract and under its bond to pay $13,233.78 to Subcontractor's laborers and materialmen and to complete the contract. Thus the total amount spent by Prime Contractor in paying Assignee and in paying Subcontractor's laborers and materialmen and to complete the subcontract was

$33,233.78, which was $9,583.78 more than Prime Contractor had agreed to pay Subcontractor to do the painting work. It is this $9,583.78 that the Prime Contractor seeks to recover.

■■ The queston is whether a prime contractor, who voluntarily pays the assignee of a subcontractor a sum of money in excess of what said assignee could have recovered if it had sued the prime contractor, may recover said excess from the assignee when said payment was made by the prime contractor without compulsion, fraud, mistake of fact, or promise on the part of the assignee to repay the excess. We hold that such voluntary payment may not be recovered.

Appellant relies strongly on the case of R. B. Tyler Company v. Laurel Equipment Company, 187 Miss. 590, 192 So. 573 (1940), which was followed in The Hancock Bank v. G. E. Bass & Company, 247 Miss. 274, 154 So. 2d 278 (1963). In *Tyler,* that firm had entered into a contract with the State Highway Commission to do certain road work, including the hauling of sand. Tyler subcontracted the sand hauling to Broom. Broom purchased eight trucks from Laurel Equipment Company and gave the Equipment Company an assignment of part of his weekly gross earnings as part payment for said trucks. Tyler, in paying Broom for the contract work, would first pay out of the funds owed Broom the amounts necessary to pay Broom's labor and operating expenses, paying the balance to Laurel Equipment Company. Later, Broom failed to pay Laurel Equipment Company for the trucks; it repossessed, sold the trucks at public auction, and brought suit for the deficiency against Tyler on the assignment. The question presented was whether Laurel Equipment Company was entitled to the whole fund due by Tyler to Broom, or whether Tyler could first pay Broom's laborers and expenses and deduct the amount paid and pay the balance to the assignee, Laurel Equipment Company. The Court

held that one to whom a contractual right is assigned takes such right subject to the burden of the provisions of the contract by which, and under which only, the assigned right would accrue to the assignor, or as otherwise sometimes expressed, the assignee is bound by the terms of the contract to the same extent as the assignor. The Court further stated that the assignment of a contractual right confers only the right which the assignor has therein, and no more.

■■■ It should be noted that in the present case there was no assignment of the contract by Subcontractor to Assignee, but only the funds to become due under the contract. Therefore, there was no contractual duty on the part of Assignee to complete the contract or to perform any part thereof. Nicholas v. Deposit Guaranty Bank & Trust Co., 248 Miss. 580, 159 So. 2d 187 (1964); Spengler v. Stiles-Tull Lumber Company, 94 Miss. 780, 48 So. 966 (1909).

■■■ Appellant contends that under the rule laid down in *Tyler* that in the present case Assignee could not have recovered if it had sued Prime Contractor on the assignment. This is to be conceded. But the question arises whether Prime Contractor, having voluntarily paid to Assignee the excess over the amount actually owed, may recover said excess.. This question has been settled by the case of McLean v. Love, 172 Miss. 168, 157 So. 361 (1934). In that case the guarantors of a third party's note voluntarily paid to the bank more than they actually owed. They each owed one-tenth of the balance due on certain notes after the proceeds of certain collateral was applied to the notes. The plaintiffs voluntarily paid one-tenth of the notes before the proceeds of the collateral was applied, thus paying more than they legally owed. This Court affirmed the denial of the right of said parties to recover the excess. The Court recognized that the plaintiff-appellants were not liable for more than $5,940.04 each, but they actually

paid $7,954.04 each, and held that the payment of the excess was a voluntary payment which could not be recovered. It was there held that a voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand. See Wilson v. Combs, 203 Miss. 286, 33 So. 2d 830 (1948), and Rowe v. Union Central Life Ins. Co., 194 Miss. 328, 12 So. 2d 431 (1943).

In the present case, as in *McLean,* there was neither mistake of fact, nor fraud, nor agreement on the part of Assignee to repay the excess. Prime Contractor was in the best position to know whether Subcontractor was properly completing its contract and paying its materialmen and laborers.

■■ As said in *McLean,* there is no hardship in the rule regarding voluntary payments and its foundation rests among the fundamentals of judicial procedure. The rule precludes the Court being occupied in undoing the arrangements of parties, which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities. Graham McNeil Co. v. Scarborough, 135 Miss. 59, 99 So. 502 (1924). And in *McLean,* the Court added that the basic purpose of judicial courts in civil cases is to extend aid to those who have not been able by lawful means to aid themselves. ■■ Courts of equity make no exertion to extend relief to those who, being able to take care of their interests, have neglected to do so, and thereupon find themselves in predicaments which ordinary care would have avoided. Prime Contractor was in a position to know or to ascertain the true facts concerning the performance by Subcontractor of its contract, and voluntarily placed itself in the pre-

dicament from which it seeks disentanglement. Under our authorities it has no right to relief. Cf. Nicholas v. Deposit Guaranty Bank, *supra.*

For the reasons stated, we are of the opinion that the learned chancellor correctly dismissed the bill of complaint and his decree is affirmed.

Affirmed.

All Justices concur.