REVISED NOVEMBER 21, 2002

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 01-60727

CHRIS ALBRITTON CONSTRUCTION COMPANY, INC; CRUMBLEY PAPER COMPANY INC; MARCUS J. MARTIN, CPA; PEACHTREE BEND LLC,

Plaintiffs-Appellants,

VERSUS

PITNEY BOWES INC; PITNEY BOWES CREDIT CORPORATION; XYZ CORPORATION; JOHN DOES, John Does A-Z,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Mississippi

September 18, 2002

Before DUHÉ, DeMOSS, and CLEMENT, Circuit Judges.

DUHÉ, Circuit Judge:

Plaintiffs-Appellants leased mail and metering equipment for their offices from Defendants-Appellees Pitney Bowes Credit Corporation and Pitney Bowes, Inc. (collectively "Pitney Bowes"). Plaintiffs contend that Pitney Bowes and other unnamed defendants have engaged in a scheme to defraud Plaintiffs, their customers. Defendants allegedly misrepresented that Pitney Bowes would not charge Plaintiffs for insurance covering the leased equipment

without first requesting proof of the customer's own insurance. Defendants are further charged with failing to make such a request and charging their customers a small but highly profitable insurance premium utilizing the misleading label of "ValueMAX." Plaintiffs asserted claims under Mississippi law of breach of contract, bad faith breach of contract, fraud and misrepresentation, and under the federal civil RICO statute. Defendants won a summary judgment dismissing each count. We reluctantly affirm.

I.

We review dismissal on summary judgment de novo, applying the same standard as the district court, viewing the evidence and the justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

The lease between the parties provides that Defendants may place the equipment under their risk management program if the customers, after request, fail to furnish proof of insurance:

> You [lessee] shall, at your expense, provide and maintain protection against loss . . . to the Equipment . . . naming us as loss payee. Such protection and coverage (and written evidence thereof delivered to us at our request) shall be satisfactory to us, and may be provided under your own insurance policy. If you fail to provide such evidence, we will have the right, but no obligation to include the Equipment under our own risk management program . . . and to charge you a fee. This fee will be reflected on our Invoice or other notice to you . . . . The arrangements contemplated by this paragraph do not constitute insurance.

2

Defendants do not dispute their obligation to first request proof of insurance before enrolling a customer in the risk management program. Defendants' affidavit provides that, as part of their Lease Management System, Defendants automatically sent Plaintiffs a computer-generated letter, requesting insurance information and informing the lessee he would be charged a ValueMAX quarterly fee if the information was not provided. Whenever the system generates letters, it prints a report indicating that the computer printed the letters, listing the addressee/lessees. The report indicates that the computer printed ValueMAX letters for Plaintiffs. In the regular course of business, the mail room places the ValueMAX letters in window envelopes and mails them with correct postage. Plaintiffs' affidavit, however, denies that they received ValueMAX letters or any request for insurance information, even though they were charged a ValueMAX fee. Viewing the disputed fact favorably to Plaintiff, we assume that Defendants did not send Plaintiffs requests for proof of insurance before charging the fee.

## II.  Fraud & Misrepresentation

We first address Plaintiffs' claims of fraud and misrepresentation, as these claims affect other aspects of the appeal. Plaintiffs' principal grievance with respect to these counts is that Defendants misrepresented that they would first request proof of insurance before imposing the ValueMAX charge. The district court dismissed the fraud and misrepresentation counts upon finding no issue of material fact regarding a fraudulent

3

misrepresentation, an essential element of each of these counts. We agree.

A breach of a promise of future action is not fraud unless it is "made with the present intent not to perform." Bank of Shaw v. Posey, 573 So. 2d 1355, 1360 (Miss. 1990). Here, Defendants' promise was to request proof of insurance before enrolling a customer in the risk management program. Therefore, an essential element of a misrepresentation would be that this promise was made when Defendants had no intention of requesting proof of insurance.

Plaintiffs have shown no issue of fact regarding Defendants' intent to send the letters at the time they entered the contract with Plaintiffs. Without evidence of present intent not to perform, a promise of future conduct will not, as a matter of law, support a claim of misrepresentation. Bank of Shaw, 573 So. 2d at 1360.

Plaintiffs point out additional evidence in an attempt to suggest an issue bearing on fraud or material misrepresentation. For example, Defendants' sales personnel do not mention insurance or ValueMAX in their sales pitch or at the time a lease is executed. The lease does not use the term "ValueMAX" or call the program "insurance." The name ValueMAX appears on the invoice and does not indicate that it is insurance. The ValueMAX charges are small enough to avoid detection. A ValueMAX charge does not appear on the first invoice which is the one most likely to be checked by the customer.

Acknowledging these facts as true suggests no omission, affirmative concealment, or misrepresentation of fact which later turned out to be true. The word ValueMAX on the invoice is not a representation of fact at all. We find no fraud or fraudulent concealment in use of the label "ValueMAX" or "ValueMAX Advantage," in view of the disclosures made.[1] The quarterly charges ranged from $14 to $30 for these Plaintiffs. A customer is generally billed after Pitney Bowes allows time for a response to the ValueMAX program letter. The size and timing of the charges do not suggest any fraud.

Plaintiffs also contend that Defendants' failure to request the proof of insurance was a material omission. The Defendants' evidence of their Lease Management System demonstrating their intention to send the letters to every new lessee remains unrefuted. Without evidence suggesting intention to mislead, Plaintiffs lack a key element of their burden of proof, even for

---

[1] On the back of the invoices, ValueMAX is defined as "equipment damage/loss coverage fee." Each invoice provides a separate toll free number for ValueMAX. The lease language calls the program a "risk management program" for which the lessee will be charged a fee if no proof of insurance is forthcoming upon request.
  Plaintiffs also complain that the introductory letter to lessees is misleading in failing to call the ValueMAX program "insurance." The letter introduces ValueMAX as a "program that satisfies your lease obligation to provide us with evidence of insurance coverage against loss, damage, theft or destruction to our equipment." The letter repeatedly makes clear that ValueMAX is an alternative to providing proof of insurance coverage for the leased equipment under the lessee's own policy. Assuming for the moment that Plaintiffs received such a letter, we find no misleading omission in the letter's failure to denominate ValueMAX "insurance."

fraudulent omission. <u>Davidson v. Rogers</u>, 431 So. 2d 483, 484-85 (Miss. 1988) (omission or concealment can constitute a misrepresentation if defendant took some affirmative action *with design or intent* to prevent discovery of facts giving rise to fraud claim). The claims for fraud and misrepresentation were properly dismissed on this summary judgment evidence.

### III. Breach of contract

The district court held that Plaintiffs' breach of contract claim is defeated by the voluntary payment doctrine. Applying this doctrine assumes, in Plaintiffs' favor, that they do not owe the ValueMAX fee because they never received a request for proof of insurance.

A voluntary payment is

a payment made, without compulsion or fraud, and without any mistake of fact, of a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand, and when there has been no agreement between the parties at the time of payment, that any excess will be repaid.

<u>McLean v. Love</u>, 172 Miss. 168, 157 So. 361, 362 (1934) (citation omitted). The payment histories for the Plaintiffs' leases show they were current with their Pitney Bowes' accounts, including all amounts charged in connection with the ValueMAX program.

If the Plaintiffs voluntarily paid for something they did not owe, the voluntary payments cannot be recovered. <u>Id.</u> "The general principle is that, where the party with full knowledge, actual or

6

imputed, of the facts, there being no duress, fraud or extortion, voluntarily pays money on a demand, although not enforceable against him, he cannot recover it back." Graham McNeil Co. v. Scarborough, 99 So. 502, 503 (Miss. 1924).

Plaintiffs have imputed knowledge of Pitney Bowes' risk management program, because they are charged with the duty to read the lease they sign, even the fine print. The purpose of the voluntary payment doctrine is to preclude courts from "'being occupied in undoing the arrangements of parties, which they have voluntarily made, and into which they have not been drawn by fraud or accident, or by any excusable ignorance of their legal rights and liabilities.'" Id. (*quoting* 2 Elliott on Contracts 645 § 1391). The exceptions for fraud, accident, or excusable ignorance do not negate the doctrine. No *fraud* is suggested by the summary judgment evidence as discussed above.

Regarding mistake or accident, "[u]ncertainty about the facts, irrespective of the reason for such uncertainty, is not the equivalent of a mistake of fact." See Mobile Telecomm. Techs. Corp. v. Aetna Cas. & Sur. Co., 962 F. Supp. 952, 956 (S.D. Miss. 1997). Plaintiffs received a bill including a ValueMAX fee, plainly listed as a separate entry, not hidden or buried in a long list of charges, and explained on the reverse; a toll-free number was provided for inquiries. Plaintiffs could have easily found out about ValueMAX before paying the fee. See Hunt v. Davis, 208 Miss

7

710, 45 So.2d 350 (1950) (mistake of fact doctrine applies only where party could not have ascertained the real facts by reasonable diligence).

Regarding excusable ignorance, the voluntary payment doctrine precludes courts from extending relief to those who have neglected to take care of their interests and are "in predicaments which ordinary care would have avoided." McLean, at 362. Plaintiffs are presumed to have known under the contract that they should not be charged for a risk management program without having been first asked to provide proof of insurance. They could have resisted the demand based on the contract or based on the information on the invoice. When, as here, the party paying "knows or ought to know the facts" and does not avail himself of the means which the law affords him to resist the demand, he has not taken due care. McLean, at 362. None of the exceptions to the voluntary payment doctrine having application to this case, we hold that Plaintiffs cannot recover their voluntary payments.

### IV. Bad Faith Breach of Contract

In a count asserting bad faith breach of contract, Plaintiffs allege that Defendants' charging them for insurance premiums under the misleading label ValueMAX without notice constituted bad faith breach of contract. We agree with the district court that this claim, too, is defeated by the voluntary payment doctrine. Nothing in Hill v. Telecom, 2000 WL 264325 (N.D. Miss. 2000), relied upon by Plaintiffs, persuades us to remand Plaintiffs' claim for bad

8

faith breach of contract for trial. The voluntary payment doctrine precludes us from extending relief to those who have neglected to take care of their interests.

## V. RICO

Plaintiffs also allege that Defendants violated the provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961-1968 (West 2000 and Supp. 2002), citing mail fraud and wire fraud as predicate acts. Plaintiffs contend that even if we dismiss their common-law fraud claim, the RICO claim should stand, because the fraud required as a predicate act for RICO does not require a misrepresentation of fact. This contention is without merit. Both mail fraud and wire fraud require a scheme or artifice *to defraud* which includes false or fraudulent pretenses, representations or promises, requiring proof of intent to defraud. 18 U.S.C.A. §§ 1341 (mail fraud), 1343 (wire fraud) (West 2000); United States v. Keller, 14 F.3d 1051, 1056 (5th Cir. 1994) (wire fraud); United States v. Kreimer, 609 F.2d 126, 128 (5th Cir. 1980)(mail fraud). As discussed above, Plaintiffs have presented insufficient summary judgment evidence of Defendants' intent to defraud to create an issue of material fact.

## Conclusion

Plaintiffs have not created any issue of material fact regarding fraudulent intent; indeed the only evidence of intent demonstrates that Defendants intended to mail the ValueMAX letters

9

and had in place an automatic computer program which would in the ordinary course of business generate and mail such a letter for each new customer.  The lack of fraudulent intent defeats Plaintiffs' claims for fraud, misrepresentation and civil RICO. The evidence further establishes that Plaintiffs voluntarily paid for the ValueMAX program under circumstances where they could have resisted the charges at the outset.  Under these facts the voluntary payment doctrine defeats Plaintiffs' claims for breach of contract and bad faith breach of contract.  Finding no genuine issue of material fact as to the Plaintiffs' claims, we affirm the summary judgment in favor of Defendants.[2]  Accordingly, the judgment of the district court is

    AFFIRMED.

---

[2]  Affirming the dismissal based on the summary judgment evidence, we do not reach Defendants' argument about economic loss, presented as alternative grounds for dismissal.