**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 21, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-60807

GENESIS INSURANCE COMPANY;PRESIDENT
RIVERBOAT CASINO-MISSISSIPPI, INC.,

Plaintiffs-Appellants,

v.

WAUSAU INSURANCE COMPANIES,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before JONES and BENAVIDES, Circuit Judges, and KAZEN,[*] District
Judge.

BENAVIDES, Circuit Judge:

## I.    BACKGROUND

On April 25, 1996, Edith Baker, a guest at The President
Casino ("President"), in Biloxi, Mississippi, was struck by a
casino-owned shuttle bus driven by a casino employee as she
attempted to cross a drop-off area in front of the casino
entrance.  Baker had emerged from a walkway to the driver's left.

---

[*]Chief District Judge of the Southern District of Texas,
sitting by designation.

-1-

The driver, whose view of the walkway was partially blocked by a six-foot chain link fence that was covered intermittently by banners or flags, did not see Baker as she stepped onto the drive. Baker was thrown 10 to 15 feet and suffered a variety of injuries, including a fractured skull, broken ribs, damage to a nerve that resulted in the permanent loss of smell and taste, and temporomandibular joint disfunction associated with damage to her jaw.

At the time of the accident, President was insured under a business automobile policy from Wausau Insurance Companies ("Wausau"). The casino immediately reported the accident to a Wausau representative and shortly thereafter Wausau retained a local independent adjuster to investigate. The adjuster completed his investigation and closed the Baker file on September 11, 1996. Baker had retained an attorney, but no settlement offer was extended.

On April 22, 1999, Baker filed a complaint in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, against President and its shuttle driver, alleging negligence in the operation of President's shuttle bus as the proximate cause of her injuries. Pursuant to its policy, Wausau hired an attorney to defend President. Mediation was unsuccessful. On January 30, 2001, the trial court approved Baker's motion, unopposed by Wausau counsel, to amend her

complaint to include an additional count for premises liability based upon the placement of the fence, the walkway, and the absence of warning signs and indicators in the vicinity of the crosswalk. The following day, Wausau sent President a letter reserving its right to deny coverage with respect to the premises liability claim. President then notified its comprehensive general liability ("CGL") insurer, Genesis Insurance Company ("Genesis"). Genesis promptly hired an attorney.

Trial was scheduled for March 5, 2001, and all motions for continuance were denied. On February 28, 2001, Genesis filed this action in the United States District Court for the Southern District of Mississippi, seeking a declaration that the Wausau policy covers the allegations in the state court Baker litigation in their entirety, with the Genesis policy providing only excess insurance over and above the $1,000,000 primary coverage afforded by the Wausau policy.

Negotiations between the parties with respect to the Baker litigation ensued. Defendants had concluded that they would stipulate to liability, leaving only the issue of damages for the jury. On March 2, 2001, a settlement of $400,000 was reached.[1] $200,000 was paid by Wausau, and $200,000 by Genesis and

---

[1]Genesis initially sought a declaratory judgment as to coverage in the Baker litigation against President as well as Wausau. Following the settlement of the Baker litigation, Genesis amended its complaint and President was realigned as a plaintiff in this action.

President (the Genesis policy contained a self-insured retention endorsement of $100,000). Genesis and President ("appellants") contend that their $200,000 payment was made with the specific understanding that all parties reserved their right to seek reimbursement from one another, as evidenced by a letter from Genesis to Wausau and the e-mails of Wausau employees.

Genesis and President filed a joint Motion for Summary Judgment, asserting that the unambiguous language of the Wausau policy provides coverage for the entirety of the Baker claim. The motion also alleged that Wausau was estopped from denying coverage because it undertook the claim and handled it exclusively from April 1996, until the end of January 2001, without issuing a non-waiver notice or a reservation of rights letter. Alleging "bad faith" on the part of Wausau, President and Genesis seek contractual and punitive damages. Wausau filed its own Motion for Summary Judgment on the grounds that President and Genesis voluntarily proferred payment for the Baker settlement, and are therefore barred from seeking reimbursement under the voluntary payment doctrine.

The district court granted summary judgment in favor of Wausau. In a Memorandum Opinion dated June 18, 2001, it concluded that under the voluntary payment doctrine, President and Genesis gave up their claims against Wausau when they voluntarily settled the Baker litigation. The court dismissed

-4-

President and Genesis's summary judgment motion as moot. President and Genesis appealed to this court.

## II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *Rivers v. Central and S. W. Corporation,* 186 F.3d 681, 682 (5th Cir. 1999). Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986). *See also Transitional Learning Comty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.,* 220 F.3d 427, 429 (5th Cir. 2000). A material fact is one that "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine'...if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.,* 257 F.3d 449, 456 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The record before the court must be considered in the light most favorable to the nonmovants, President & Genesis. *Sulzer Carbomedics, Inc.*, 257 F.3d at 456.

In a diversity action such as this one, federal courts are bound to apply the choice of law rules of the forum state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313

U.S. 487, 496 (1941). The outcome of diversity litigation in a district court should be the same as if the case had been tried in the forum state's court. *Siciliano v. Hudson,* 1996 WL 407562, *2 (N.D. Miss. 1996)*. See also Guaranty Trust Co. v. York,* 326 U.S. 99, 109-110 (1945). The parties agree, and Mississippi choice of law dictates that the laws of the state of Mississippi apply. *See Boardman v. United Services Auto Ass'n,* 470 So. 2d 1024, 1032 (Miss. 1985)*; Guaranty Nat. Ins. Co. v. Azrock Industries Inc.,* 211 F.3d 239, 243 (5th Cir. 2000). We therefore attempt to ascertain what Mississippi's highest court would decide if faced with the issues presented in this case. *See United Nat'l Ins. Co. v. SST Fitness Corp.,* 309 F.3d 914, 917 (6th Cir. 2002).

## III. DISCUSSION

### A. The Volunteer Doctrine

Genesis and President ask us to determine (1) whether the volunteer doctrine bars them from recovering the monies they contributed to the Baker settlement, (2) whether Wausau breached its contract of insurance with President by denying coverage for the premises liability claim, and (3) whether Wausau breached the contract in bad faith.

The district court held that Genesis and President had waived their right to recover the payments they made in the Baker

settlement on the basis of the volunteer doctrine, a common-law construct that has been consistently followed in Mississippi. The rule establishes that:

> [A] voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand.

*McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co.,* 175 So.2d 603, 605 (Miss. 1965). *Accord Presley v. American Guarantee & Liability Ins. Co.,* 116 So.2d 410, 416 (Miss. 1959); *McLean v. Love*, 157 So. 361, 362 (Miss. 1934). Finding that President and Genesis were not compelled to contribute to the Baker litigation, laboring under a mistake of fact, or had entered into an agreement with Wausau to reserve their rights to dispute coverage, the district court concluded that President and Genesis were barred from seeking reimbursement by the volunteer doctrine. Because we are convinced that an issue of fact remains as to whether there was an agreement between the parties to subsequently litigate the coverage issue, we reverse the district court's grant of summary judgment.

1. *Was there an agreement to litigate coverage following settlement?*

A mutual agreement between President, Wausau, and Genesis to litigate their respective liabilities among themselves after

-7-

settling the Baker litigation would preclude the application of the volunteer doctrine. *See McLean,* 157 So. At 362. *Accord McDaniel Bros. Constr. Co.,* 175 So.2d at 605; *Presley,* 116 So.2d at 416. Genesis contends that its reservation of rights letter, combined with Wausau's internal e-mails, indicate the presence of an agreement.

The district court concluded that the settlement with Baker took place "in lieu" of a legal determination of the parties' respective obligations under their policies. The court premised its decision upon the legal rule that a payment under "protest" or accompanied by a unilateral reservation of rights will not escape the application of the volunteer doctrine. *See Rowe v. Union Central Life Ins. Co.,* 12 So. 2d 431, 433 (Miss. 1943); *Horne v. Time Warner Operations, Inc.,* 119 F. Supp. 2d 624, 629 (S.D. Miss. 1999).

A review of the record, however, reveals that the appellants have raised a fact issue as to whether Genesis's reservation of rights was indeed unilateral or whether Wausau had agreed with President and Genesis to preserve the coverage issue for resolution at a later date. On March 5, 2001, before money changed hands in the Baker settlement, Genesis's attorney sent counsel for Wausau a letter which states:

> In furtherance of our telephone conversation last week, all parties to the discussions on settlement (Bob Sheriff on behalf of Wausau, Maria Johnson on behalf of

> the President, and me on behalf of Genesis) agreed that amounts contributed toward settlement of the Edith Baker suit against the President and its driver would be contributed without prejudice to the rights of any party to deny coverage and obligation to pay, and to seek recovery from other contributing parties. Our Complaint for Declaratory Judgment filed in federal court is consistent with this agreement.
>
> As you know, an agreement of settlement has now been reached at $400,000.... As noted above, all payments are without prejudice to the rights, claims and defenses of the respective payors.

Wausau did not respond to the letter. Thus the letter itself does not constitute conclusory evidence of an agreement between the parties. *See Sweet Home Water & Sewer Assoc. v. Lexington Estates, Ltd.,* 613 So.2d 864, 871 (Miss. 1993)(holding that a valid contract requires acceptance by the offeree); *Palmer v. Security Life Ins. Co. of Am.,* 189 F. Supp. 2d 584, 589 (S.D. Miss. 1999)(listing the six requirements of a valid contract, including mutual assent). The letter does, however, relate the existence of an oral agreement. Oral agreements are recognized and enforceable in Mississippi. *Murphree v. W.W. Transportation,* 797 So.2d 268, 273 (Miss. Ct. App. 2001).

President and Genesis supplied additional evidence of an oral agreement in the form of an email exchange on March 2, 2001, between Robert Sheriff (referred to in the letter from Genesis as Bob Sheriff), and fellow Wausau colleague, William Carroll.

> **Carroll:** If they [Genesis] make an agreement to settle, are they not stuck with a voluntary agreement? What gives them the right to come back after the fact, wouldn't they have to

> do it up front unless we agreed to some kind of funding agreement?
>
> **Sheriff:** We have Reserved our Rights as to coverage and Genesis has Reserved their Rights as to coverage.

Sheriff's response to Carroll indicates that an agreement with Genesis that each party would reserve their rights to subsequently litigate the coverage question had occurred or was a *fait accompli*. The email exchange and letter from Genesis to Wausau constitute probative evidence in support of the contention that the parties were of one mind regarding the preservation of the coverage issue in the face of the Baker settlement. *See In re Estate of Davis,* 832 So.2d 534, 537 (Miss. Ct. App. 2001)(holding that meeting of the minds and consideration between competent parties are the requisite ingredients of a valid and binding agreement). Sheriff's denial of such an agreement in his deposition is insufficient to justify the district court's conclusion on summary judgment that one did not exist.

The presence or absence of an agreement is a question of fact to be resolved by the fact-finder. *Ham Marine, Inc. V. Dresser Indus., Inc.,* 72 F.3d 454, 458 (5th Cir. 1995); *Hunt v. Coker,* 741 So.2d 1011, 1015 (Miss. Ct. App. 1999). Thus, we decline to determine on appeal whether the parties had an oral agreement to litigate the coverage issue following settlement and remand the issue to the district court for trial. *But see Nat'l Surety Corp. v. Western Fire & Indemnity Co.,* 318 F.2d 379, 385-

-10-

86 (5th Cir. 1963)(applying Texas law, but citing no cases, and holding that where two insurance companies, in their mutual best interest, split the cost of settling a case, they had implicitly agreed to subsequently determine their respective obligations, thus barring the application of the volunteer doctrine).

    2.    *Were President and Genesis's Payments Voluntary or Compelled?*

An involuntary payment is one "not proceeding from choice." 66 Am. Jur. § 112 (2001). Payments that are made by virtue of legal obligation or by accident or mistake are inherently involuntary.[2] *Id.* Payments made under compulsion are also not

---

[2] Genesis contends that it (and thereby President, through the self-insured retention addendum) was legally obligated to contribute to the settlement, citing *Keys v. Rehabilitation Cntr., Inc.,* 574 So.2d 579 (Miss. 1990). The argument is untenable. At a minimum, the fact that the appellants beseach this court, in the same petition, to make a legal determination that Genesis's policy did *not* obligate them to contribute to the settlement certainly puts their claim to the contrary with respect to the volunteer doctrine in doubt. At the time of the settlement, no determination had been made regarding the legal liability of Genesis in the Baker litigation. All that had been *voluntarily* stipulated to was the liability of Wausau *and/or* Genesis. Genesis filed this declaratory judgment action expressly for the purpose of determining its uncertain legal liability. Genesis was accordingly no more legally obligated to contribute to a settlement than the parties in *Armco v. Southern Rock, Inc.* and *Rowe v. Union Cent. Life Ins. Co.,* which were found to have made their payments voluntarily. *See Armco,* 696 F.2d 410 (5th Cir. 1983); *Rowe,* 12 So.2d 431 (Miss. 1942).

Genesis and President do not contend that were laboring under a mistake of fact when they made their settlement payments, nor do they claim to have been fraudulently induced to do so.

considered voluntary, and are thus not barred from recovery by the volunteer doctrine.  *McDaniel Bros. Const. Co., Inc. v. Burk-Hallman Co.,* 175 So.2d 603 (Miss. 1965); *McLean v. Love,* 157 So. 361, 362 (1934).

President and Genesis contend that their contributions to the Baker settlement were the product of compelling circumstances created by Wausau, and thus were not voluntary.  Specifically, the appellants argue that Wausau, in notifying President of its intention to deny coverage with respect to a premises liability claim less than a month and a half before trial deprived it and Genesis of the ability to mount an adequate defense, thus forcing them to participate in a settlement.[3]  The district court disagreed, holding that, as a matter of law, a "lack of timely notice" does not sufficiently compel to enable an otherwise voluntary payment to achieve immunity from the voluntary payment doctrine.  While Wausau's handling of the Baker claim appears to have been less than admirable, we agree that its conduct did not compel President and Genesis to throw their hats into the settlement ring.

The meaning of compulsion with respect to the voluntary

---

[3]President and Genesis also contend that they were compelled to contribute to the Baker settlement by Wausau's refusal to settle the litigation in the absence of their contribution.  The evidence presented, however, is indicative merely of "hard bargaining," not compulsion.  *See* 66 Am. Jur. 2d § 123.

payment doctrine is not well-defined in Mississippi.  There are only a handful of Mississippi state cases that discuss the voluntary payment doctrine at any length, and neither the parties nor or independent research have revealed any that have been decided within the past twenty years.[4]  There has been a trend toward expanding the range of situations that are considered compelling, 66 Am. Jur. 2d § 109; *Halstead Terrace Nursing Cntr., Inc. V. Scottsdale Ins. Co.,* 1997 WL 124263 *3 (N.D. Ill. 1997), that Mississippi has not yet had the opportunity to pass upon. As in many other areas of the law, whether a payment was compelled or made voluntarily is a highly factual determination, *Glantz Contracting Co. v. General Electric Co.,* 379 So.2d 912, 917-18 (Miss. 1980), and none of the Mississippi cases address the issue of compulsion issue apart from its particular factual context.  Accordingly, we enlist the assistance of cases from other jurisdictions and the legal literature in an attempt to surmise whether the Mississippi Supreme Court, as a matter of law, would apply the voluntary payment doctrine in the undisputed factual circumstances surrounding the settlement.  *See, e.g.,*

---

[4]*See, e.g., Town of Wesson v. Collins,* 18 So. 360 (Miss. 1895); *Schmittler v. Sunflower County,* 125 So. 534 (Miss. 1930); *McLean v. Love,* 157 So. 361 (Miss. 1934); *Rowe v. Union Central Life Ins. Co.,* 12 So.2d 431 (Miss. 1943); *Presley v. Am. Guarantee & Liability Ins. Co.,* 116 So.2d 410 (Miss. 1959); *McDaniel Bros. Const. Co. v. Burk-Hallman Co.,* 175 So.2d 603 (Miss. 1965); *State Farm Mutual Automobile Ins. Co. V. Allstate Ins. Co.,* 255 So.2d 667 (Miss. 1971); *Glantz Contracting Co. V. General Electric Co.,* 379 So.2d 912 (Miss. 1980).

*American Indemnity Lloyds v. Travelers Property & Casualty Ins. Co.,* 2003 WL 21437012 (5th Cir. 2003); 66 Am. Jur. 2d §§ 108-09 (2001).

Not all pressure for payment amounts to compulsion. 16 Lee R. Russ, Couch on Insurance § 223.28 (3d. ed. 2003). The general rule guiding the determination of whether a payment was made voluntarily or not can be stated as follows:

> where a person pays an illegal demand, with full knowledge of all the facts which render the demand illegal, without an *immediate and urgent necessity to pay*, unless it is to release his or her person or property from detention or to prevent an immediate seizure of his or her person or property, the payment is voluntary. It is only when, in an emergency for which a person is not responsible, the person is compelled to meet an illegal exaction to protect his or her business interest that he or she may recover the payment, but if, with knowledge of the facts, that person voluntarily takes the risk of encountering the emergency, the payment is voluntary and may not be recovered.

66 Am. Jur. 2d § 109 (emphasis added). President and Genesis's claim of compulsion falls short in two respects.

President and Genesis were faced with one of two options: (1) contributing $200,000 immediately to a settlement; or (2) allowing the Baker case to go to trial, and waiting for a ruling in the declaratory judgment action, at which point they would be held responsible for a certain percentage (estimated from 0%-50%) of the damages (that Genesis feared could reach $1 million) as determined by a jury for whom they had little time to prepare.

-14-

First, this dilemma lacks the sense of immediacy often accompanied by compelled payments. *See, e.g., Glantz,* 379 So.2d at 917-18 (finding that appellee who could either make payments or face an immediate work stoppage threatening an important contract was compelled to make payments); *Mobile Telecomm. Tech. Corp. V. Aetna Casualty & Surety Co.,* 962 F. Supp. 952, 955 (S.D. Miss. 1997)("It is well-established that it is not duress to institute or threaten to institute civil suits..."). Litigation, particularly where two separate cases, in two separate courts, are involved, often takes years to resolve.

Second, the stakes, in the event that President and Genesis refused to participate in the settlement, were of an insufficiently dire magnitude to justify finding that their settlement contributions were compelled. "[A] payment is considered coerced only where it is made to avoid the loss of a necessity, or to prevent an injury to a person, business or property which is different and disproportionately greater than the unlawful demand. *Dreyfus v. Ameritech Mobile Comm., Inc.,* 700 N.E.2d 162, 165-66 (1998). *See, e.g., Mobile Telecomm.,* 962 F. Supp. 952 (finding no compulsion when insurer had choice between making payments on its insured's $2 million legal bill or awaiting coverage determination and possibly paying additional amount for insured's interim financing); *Alcoa Steamship Co. V. Velez,* 285 F. Supp. 123, 125 (D. P. R., 1968) (holding that

-15-

employer's payment of workmen's compensation insurance premium, when faced with alternative of losing all coverage, was compelled).

Surely, the prospect of paying a maximum, as estimated by President and Genesis, of $1,000,000 between them after the jury returned its verdict, and all appeals (of both the state case and this action) had been exhausted, did not threaten to have such "a disastrous effect to business" that President and Genesis, two national corporations, one of whose business was to insure against precisely these kinds of judgments, felt compelled to contribute to the Baker settlement. *Randazzo v. Harris Bank Palatine, N.A.,* 262 F.3d 663, 669 n.1 (7th Cir. 2001). This is particularly true when we take appellants' contention (which is well supported) that the Genesis policy did not cover the Baker accident (meaning that they would ultimately not be required to pay any portion of a jury verdict) at face value. *Compare Halstead Terrace Nursing Cntr., Inc. v. Scottsdale Ins. Co.,* 1997 WL 124263 (finding that where insured nursing home was faced with "'enormous potential liability' in excess of the policy limits," treble damages, and disruption to personnel by continued litigation of a wrongful death suit against it, $175,000 payment in order to enable settlement was compelled).

While Wausau's questionable conduct placed Genesis in an unenviable position, the law does not permit us to grant Genesis

and President immunity from the volunteer doctrine on the grounds that their settlement payments were compelled. Wausau, President, and Genesis recognized that there was little chance that a jury would not find in favor of Baker after viewing a videotape that showed President's shuttle bus hitting Baker as she walked onto the crosswalk. The liability stipulation, and subsequent settlement, were borne not so much of Wausau's compulsion, but of strategy (albeit influenced by Wausau's actions).

### 3.  Justice Denied?

President and Genesis, claiming that Wausau's demand for payment was unjust, urge us to create a new exception to the Mississippi volunteer doctrine premised upon the inadequacy of the legal remedy that they sought (a declaratory judgment) and the societal interest in encouraging settlements over protracted litigation. The heart of their argument is that policy considerations require such an exception.

It is not policy, however, but law that guides our determinations. Particularly when our jurisdiction exists through diversity, we feel compelled to tread lightly and allow the state court to take the first step in developing new doctrines. We therefore decline to make a predictive statement on Mississippi's behalf approving of and applying an exception for those who pursue their available legal remedies and yet in

good faith make what is alleged to be an unjustly demanded payment in their best interest.

## B.    Breach of Contract & Bad Faith

The district court dismissed President's breach of contract and bad faith claims summarily as derivative of the reimbursement issue. There were therefore no findings or conclusions of law regarding these claims. Naturally, the district court will revisit its ruling following its determination on remand as to whether Wausau, President, and Genesis agreed to litigate the coverage issue following settlement. It would be premature for us to rule on them at this time, as well as an unjustifiable extension of our appellate function.

## IV.    Conclusion

President and Genesis have created an issue of fact as to whether they agreed with Wausau to litigate the coverage issue following settlement. We thus VACATE and REMAND the district court's grant of summary judgment on the ground that the volunteer doctrine bars the appellants from recovering their payments.

VACATED and REMANDED.