## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60094

United States Court of Appeals
Fifth Circuit

**FILED**
April 16, 2018

Lyle W. Cayce
Clerk

COLONY INSURANCE COMPANY,

>  Plaintiff - Appellant

v.

FIRST SPECIALTY INSURANCE CORPORATION,

>  Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:16-CV-191

Before WIENER, GRAVES, and HO, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

Colony Insurance Company appeals from the district court's judgment in favor of First Specialty Insurance Corporation. Because this case presents determinative questions of Mississippi law for which there is no applicable precedent, we CERTIFY those questions to the Supreme Court of Mississippi.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60094

COURT OF MISSISSIPPI, PURSUANT TO RULE 20 OF THE MISSISSIPPI RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:

## I.  STYLE OF THE CASE

The style of the case in which this certification is made is *Colony Insurance Company v. First Specialty Insurance Corporation*, No. 17-60094, in the United States Court of Appeals for the Fifth Circuit.  The case is on appeal from the United States District Court for the Southern District of Mississippi. Federal jurisdiction is based on diversity of citizenship.

## II.  STATEMENT OF FACTS

On July 28, 2014, Jerry Lee Taylor II, an employee of Accu-Fab & Construction, Inc., was killed in an explosion at Omega Protein Corporation's facility in Moss Point, Mississippi. ROA.110, 292.

When the explosion occurred, two third-party liability insurance policies identifying Omega as a named insured were in effect. One of those policies, issued by Ace American Insurance Company (AAIC), provided Omega with $1 million in primary coverage. ROA.110. The other policy, issued by First Specialty Insurance Corporation, provided Omega with $10 million of coverage excess to that provided by the AAIC Policy. ROA.110, 237–71.

A third-party liability insurance policy issued by Colony Insurance Company was also in effect. The Colony Policy named Accu-Fab as the insured and provided $1 million in coverage. ROA.110, 170–236. The Colony Policy contained an "Additional Insured" endorsement, which designated "[a]ll persons or organizations as required by written contract with the Named Insured" as being insureds under the Colony Policy as well, subject to certain limitations and exclusions. ROA.218.

2

No. 17-60094

On March 4, 2015, Omega informed Colony that it expected to receive "claims for personal injury and/or wrongful death" arising out of the July 2014 explosion. Asserting that it qualified as an "additional insured" under the Colony Policy, Omega demanded that Accu-Fab and Colony "defend and fully indemnify [it] from any [such] claims." ROA.292–93.

On March 13, 2015, Colony notified Omega that it was conducting an investigation into the explosion "under a full and complete reservation of rights . . . including the right to disclaim coverage in whole or in part should it consider such denial warranted." Colony contended that the Colony Policy's "Total Pollution Exclusion may apply to preclude coverage in this matter" and expressed doubt that Omega qualified as an "additional insured." ROA.414–15.

On April 17, 2015, Colony filed a complaint for declaratory judgment in the Circuit Court of Jackson County, Mississippi. The complaint, which named Accu-Fab and Omega as defendants, sought a court order "declaring that the [Colony Policy] does not provide any coverage for any and all damages or injuries sustained as a result of the [July 2014] explosion." ROA.788–92.

On September 2, 2015, Taylor's estate and survivors filed a wrongful death action against Omega in federal district court. Colony subsequently agreed to fund Omega's defense, subject to a "full and complete" reservation of rights, "including the right to seek recovery of all defense costs it incurs on behalf of Omega should a court determine that Colony does not in fact owe a defense to [Omega]." ROA.416–17. In a letter dated December 9, 2015, Colony informed Omega's attorney that:

> Colony's position is that it does not believe the policy of insurance it issued to Accu-Fab provides any coverage whatsoever for the unfortunate incident which occurred at the Omega Protein facility on July 28, 2014. Nevertheless, at your request Colony has agreed to fund the defense of Omega Protein, and is pursuing a

3

No. 17-60094

declaratory judgment action in order to have the court determine whether its coverage position is or is not correct. Colony is providing a good-faith defense to Omega through the services of your law firm and yourself. If the court ultimately determines that the policy issued by Colony to Accu-Fab does not require that it fund Omega's defense, Omega will have been unjustly enriched to the extent Colony paid its defense costs when it had no obligation to do so.

ROA.361. Colony also wrote that, "[w]ith regard to Taylor's settlement demand, Colony will of course consider any reasonable demand sent to it," but "any demands for settlement made on behalf of the estate and survivors of Mr. Taylor will be reviewed in light of the insurance coverage issue which is currently the subject of Colony's declaratory judgment action." ROA.361–62.

A settlement conference in the *Taylor* lawsuit was set for January 14, 2016. On January 12, 2016, First Specialty sent a letter to Colony stating that "the settlement conference presents an excellent but limited opportunity to settle this claim for $2 million or less" and requesting that Colony "be prepared to tender its $1 million primary limits on January 14 to achieve a settlement." ROA.793. First Specialty asserted that AAIC "is prepared to tender its $750,000 limits to achieve a settlement" and that "Omega has tendered its $250,000 deductible under the [AAIC] policy." ROA.794, 796. The letter concluded:

> The Taylor claim will certainly not settle for $1 million. As noted, failure to take advantage of the opportunity on January 14 to settle the Taylor claim for $2 million or less may not come again and may result in substantial unnecessary losses for Omega and its excess insurers, potentially including [First Specialty]. Accordingly, [First Specialty] respectfully requests Colony to be prepared to tender its limits to settle the Taylor claim during the January 14 settlement conference.

ROA.796.

No. 17-60094

At the settlement conference, Colony agreed to pay the Colony Policy's $1 million policy limit in return for Omega's "full and complete release" from the *Taylor* lawsuit. ROA.797. AAIC also settled for its policy limits. ROA.110. Colony then dismissed its declaratory judgment action. ROA.115 n.3.

In post-settlement correspondence, Colony asserted that the Colony Policy did not cover Omega in connection with the *Taylor* lawsuit and demanded that First Specialty reimburse "the full $1 million Colony contributed to the *Taylor* settlement within 14 days." ROA.797–99. When First Specialty refused, Colony filed the present suit in the United States District Court for the Southern District of Mississippi. Asserting claims for equitable subrogation and implied indemnity under Mississippi law, Colony sought to recover the amounts it expended on Omega's behalf in defending and settling the *Taylor* lawsuit. ROA.159–68.

Colony and First Specialty filed cross-motions for summary judgment. The district court granted First Specialty's motion, denied Colony's motion, and entered a final judgment dismissing Colony's suit with prejudice. ROA.109–17. In concluding that First Specialty was entitled to summary judgment on Colony's equitable subrogation claim, the district court relied entirely on Mississippi's voluntary payment doctrine. Observing that Colony's position "is, and has always been, that it did not insure Omega," and accepting that position as true for summary judgment purposes, the district court concluded that Colony acted as a "voluntary payor" and could not "recover for payments made on behalf of a defendant that it did not even insure simply because it feared that the defendant might be an additional insured under its policy." ROA.113–15. The district court granted summary judgment on Colony's implied indemnity claim "for a similar reason," concluding that Colony's position that it did not insure Omega meant that it "was not obligated to pay" any portion of the *Taylor* settlement. ROA.115. Colony appealed.

No. 17-60094

## III.  DISCUSSION

Mississippi's voluntary payment doctrine provides that "'[a] voluntary payment can not be recovered back.'" *Genesis Ins. Co. v. Wausau Ins. Cos.*, 343 F.3d 733, 736 (5th Cir. 2003) (quoting *McDaniel Bros. Constr. Co., Inc. v. Burk-Hallman Co.*, 175 So. 2d 603, 605 (1965)). "Payments made under compulsion are . . . not considered voluntary, and are thus not barred from recovery by the volunteer doctrine." *Id.* at 738. Similarly, "[p]ayments that are made by virtue of legal obligation or by accident or mistake are inherently involuntary." *Id.* (citing 66 Am. Jur. § 112 (2001)).

In the insurance context, the Mississippi Supreme Court has long held that "payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover." *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 So. 2d 667, 669 (Miss. 1971) (citation and internal quotation marks omitted). More recently, the court has held that the voluntary payment doctrine does not preclude an insurer from recovering a settlement payment made on behalf of an insured, provided the insurer "can prove it was legally liable to settle, and that the amount it paid . . . was reasonable." *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1280 (Miss. 2009) (*Guidant I*). The court subsequently explained that "the phrase 'legally liable to settle' mean[s] that [the insurer] must prove that it had a legal *duty* to settle, or at least a legal duty to consider the insured's best interest and to make an honest evaluation of a settlement offer within the policy limits." *Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 151 (Miss. 2012) (*Guidant II*).

As the district court observed, the insurer that sought recovery in *Guidant I* and *II* apparently did not dispute that the individual on whose behalf it settled was its insured. Here, by contrast, Colony has consistently maintained that Omega is *not* its insured. First Specialty argues that this is a

6

crucial distinction: if Omega is not its insured, Colony did not act out of compulsion or a legal duty owed to Omega when it decided to contribute to the *Taylor* settlement.

Colony, on the other hand, contends that it did not act as a volunteer simply because it disputed Omega's status under the Colony Policy. In particular, Colony argues that, having assumed Omega's defense of the *Taylor* lawsuit in good faith, it became obligated to act in the best interests of Omega as its *purported* insured, at least until the coverage issue was resolved. Before the coverage question was resolved, Colony was presented with an offer to settle the *Taylor* lawsuit within policy limits. Colony maintains that it acted in Omega's best interests (and its own) when it accepted that offer: proceeding to trial would have risked an even larger judgment against Omega, for which Colony may have been liable if it was ultimately determined that the Colony Policy covered Omega.

We have not located any decision of the Supreme Court of Mississippi addressing whether the voluntary payment doctrine precludes recovery by an insurer that contributes to a settlement on behalf of a purported insured whose defense the insurer has undertaken but whom the insurer maintains is not actually its insured. During oral argument, Colony and First Specialty agreed that the Mississippi Supreme Court has not addressed this issue. Because this determinative issue of state common law is "genuinely unsettled," we conclude that certification is appropriate. *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997); MISS. R. APP. P. 20(a).

## IV.  QUESTIONS CERTIFIED

Consistent with our respect for federalism and the authoritative role of state supreme courts in issuing binding interpretations of state law, while simultaneously respecting the parties' choice of a federal forum by reserving for this Court the final power of judgment, we hereby certify, on our own

motion, the following determinative questions of law to the Supreme Court of Mississippi:

> Mississippi's voluntary payment doctrine does not bar an insurer from recovering a settlement payment made under "compulsion" or as the result of a settlement-related "legal duty."
>
> 1. Does an insurer act under "compulsion" if it takes the legal position that an entity purporting to be its insured is not covered by its policy, but nonetheless pays a settlement demand in good faith to avoid potentially greater liability that could arise from a future coverage determination?
>
> 2. Does an insurer satisfy the "legal duty" standard if it makes a settlement payment on behalf of a purported insured whose defense it has assumed in good faith, but whose coverage under the policy has not been definitively resolved, even if the insurer maintains that the purported insured is not actually insured under the policy?

We disclaim any intention or desire that the Supreme Court of Mississippi confine its reply to the precise form or scope of the questions certified. The record in this case and copies of the parties' briefs are transmitted herewith. We retain cognizance of this appeal pending response from the Supreme Court of Mississippi.