# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-FC-00574-SCT

*COLONY INSURANCE COMPANY*

*v.*

*FIRST SPECIALTY INSURANCE CORPORATION*

| | |
|---|---|
| ATTORNEYS FOR APPELLANT: | RICHARD EDWARD KING<br>OLIVIA YEN TRUONG |
| ATTORNEYS FOR APPELLEE: | DAVID A. BARFIELD<br>DALE T. MILLER |
| NATURE OF THE CASE: | CIVIL - FEDERALLY CERTIFIED QUESTION |
| DISPOSITION: | CERTIFIED QUESTION NO. 1: ANSWERED. CERTIFIED QUESTION NO. 2: DECLINED - 01/31/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Under the provisions of Rule 20 of the Mississippi Rules of Appellate Procedure, the

United States Court of Appeals for the Fifth Circuit has certified questions to this Court.[1] An

---

[1]Mississippi Rule of Appellate Procedure 20 provides,

[W]hen it shall appear to the Supreme Court of the United States or to any United States Court of Appeals that there may be involved in any proceeding before it questions or propositions of law of this state which are determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court, the federal court may certify such questions or propositions of law of this state to the Mississippi Supreme Court for rendition of a written opinion concerning such questions or propositions of Mississippi law. The Supreme Court may, in its discretion, decline to answer the questions certified to it.

incident at Omega Protein Corporation's (Omega) facility resulted in the death of an employee of Accu-Fab & Construction, Inc. (Accu-Fab). Although Colony Insurance Company (Colony) continually maintained that it did not insure Omega, Colony negotiated and paid a settlement claim under a reservation of rights on Omega's behalf. Because Colony took the position that it had no duty to defend Omega at all, the district court concluded that Mississippi's voluntary-payment doctrine precluded Colony's claims for equitable subrogation and implied indemnity.

¶2.     Pursuant to this Court's precedent, an insurer is barred from seeking indemnity for a voluntary payment. ***Keys v. Rehab. Ctrs., Inc.***, 574 So. 2d 579, 584 (Miss. 1990); *see* ***McDaniel Bros. Const. Co. v. Burk-Hallman Co.***, 175 So. 2d 603, 605 (Miss. 1965) ("[A] voluntary payment can not be recovered back. . . ."). In order to recover, the indemnitee must prove that it both paid under compulsion and that it was legally liable to the person injured. ***Id.*** The Fifth Circuit certified the following questions to this Court:

> 1) Does an insurer act under "compulsion" if it takes the legal position that an entity purporting to be its insured is not covered by its policy, but nonetheless pays a settlement demand in good faith to avoid potentially greater liability that could arise from a future coverage determination?
>
> 2) Does an insurer satisfy the "legal duty" standard if it makes a settlement payment on behalf of a purported insured whose defense it has assumed in good faith, but whose coverage under the policy has not been definitively resolved, even if the insurer maintains that the purported insured is not actually insured under the policy?

---

M.R.A.P. 20(a).

*Colony Ins. Co. v. First Specialty Ins. Corp.*, 726 F. App'x 992, 995-96 (5th Cir. 2018)

## FACTS AND PROCEDURAL HISTORY

¶3.　On July 28, 2014, an explosion at Omega's facility in Moss Point, Mississippi, killed an employee of Accu-Fab, Jerry Lee Taylor II. At the time of the incident, Omega was the named policyholder of two third-party insurance policies. ACE American Insurance Company (AAIC) provided a $1,000,000 primary commercial general liability policy to Omega, subject to a $250,000 deductible. First Specialty Insurance Corporation also provided a $10,000,000 excess liability policy, which provided limits in excess of the underlying AAIC policy. In addition, Accu-Fab was the named policyholder of a third-party insurance policy issued by Colony. Colony issued to Accu-Fab a primary liability policy with a $1,000,000 liability limit. The Colony Policy contained an "Additional Insured" provision, which designated "[a]ll persons or organizations as required by written contract with the Named Insured" as being insureds under the Colony Policy as well, subject to certain limitations and exclusions.

¶4.　The Fifth Circuit summarized the subsequent events as follows:

> On March 4, 2015, Omega informed Colony that it expected to receive "claims for personal injury and/or wrongful death" arising out of the July 2014 explosion. Asserting that it qualified as an "additional insured" under the Colony Policy, Omega demanded that Accu-Fab and Colony "defend and fully indemnify [it] from any [such] claims."

> On March 13, 2015, Colony notified Omega that it was conducting an investigation into the explosion "under a full and complete reservation of rights . . . including the right to disclaim coverage in whole or in part should it consider such denial warranted." Colony contended that the Colony Policy's

3

"Total Pollution Exclusion may apply to preclude coverage in this matter" and expressed doubt that Omega qualified as an "additional insured."

On April 17, 2015, Colony filed a complaint for declaratory judgment in the Circuit Court of Jackson County, Mississippi. The complaint, which named Accu-Fab and Omega as defendants, sought a court order "declaring that the [Colony Policy] does not provide any coverage for any and all damages or injuries sustained as a result of the [July 2014] explosion."

On September 2, 2015, Taylor's estate and survivors filed a wrongful death action against Omega in federal district court.[2] Colony subsequently agreed to fund Omega's defense, subject to a "full and complete" reservation of rights, "including the right to seek recovery of all defense costs it incurs on behalf of Omega should a court determine that Colony does not in fact owe a defense to [Omega]." In a letter dated December 9, 2015, Colony informed Omega's attorney that:

> Colony's position is that it does not believe the policy of insurance it issued to Accu-Fab provides any coverage whatsoever for the unfortunate incident which occurred at the Omega Protein facility on July 28, 2014. Nevertheless, at your request Colony has agreed to fund the defense of Omega Protein, and is pursuing a declaratory judgment action in order to have the court determine whether its coverage position is or is not correct. Colony is providing a good-faith defense to Omega through the services of your law firm and yourself. If the court ultimately determines that the policy issued by Colony to Accu-Fab does not require that it fund Omega's defense, Omega will have been unjustly enriched to the extent Colony paid its defense costs when it had no obligation to do so.

Colony also wrote that, "[w]ith regard to Taylor's settlement demand, Colony will of course consider any reasonable demand sent to it," but "any demands for settlement made on behalf of the estate and survivors of Mr. Taylor will be reviewed in light of the insurance coverage issue which is currently the subject of Colony's declaratory judgment action."

---

[2]Taylor's estate did not name Accu-Fab as a party.

4

*Colony Ins. Co.*, 726 F. App'x at 992-93.

¶5. The court scheduled a settlement conference in the Taylor lawsuit for January 14, 2016. Two days before the settlement conference, First Specialty wrote to Colony and requested that Colony settle the lawsuit. The letter stated in relevant part,

> The Colony Additional Insured endorsement amends its Other Insurance clause, stating that the Colony coverage "is primary insurance and [Colony] will not seek contribution from any other insurance available to [Colony] additional insured." Colony, therefore, is primary to [AAIC]. The Taylor claim will certainly not settle for $1 million. As noted, failure to take advantage of the opportunity on January 14 to settle the Taylor claim for $2 million or less may not come again and may result in substantial unnecessary losses for Omega and its excess insurers, potentially including [First Specialty]. Accordingly, [First Specialty] respectfully requests Colony to be prepared to tender its limits to settle the Taylor claim during the January 14 settlement conference. . . .

At the settlement conference, Colony excluded First Specialty's representative from the conference and agreed to pay its $1,000,000 policy limit in exchange for Omega's "full and complete release" from the lawsuit. Colony subsequently dismissed its declaratory-judgment action against Omega.

¶6. Colony then demanded that First Specialty reimburse the full amount Colony contributed to the Taylor settlement. When First Specialty refused, Colony filed an action against it seeking reimbursement of the amount it had contributed to the settlement of Taylor's wrongful-death lawsuit against Omega. Colony asserted claims of equitable subrogation and implied indemnity.

¶7. In response, First Specialty filed a Motion for Summary Judgment, and Colony filed

5

a Cross Motion for Summary Judgment. The district court found that Mississippi's voluntary-payment doctrine precluded Colony from recovery for payments made on behalf of a defendant that it did not insure and granted First Specialty's motion. The district court then entered a final judgment dismissing Colony's suit with prejudice. Colony appealed to the Fifth Circuit. The Fifth Circuit then certified the above-stated questions to this Court.

## ANALYSIS

¶8.     Mississippi law provides that a voluntary payment cannot be recovered back. *McLean v. Love*, 172 Miss. 168, 157 So. 361, 362 (1934).  A voluntary payment is one which is made "[w]ithout compulsion or fraud, and without any mistake of fact, of a demand which the payor does not owe, and which is not enforceable against him. . . ." *Id.* A "voluntary payor" is a "stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay." *Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 150 (Miss. 2012) ("*Guidant II*").

¶9.     A payment may not be considered voluntary unless the payor had "full knowledge of all the facts which would render the payment voluntary." *Glantz Contracting Co. v. Gen. Elec. Co.*, 379 So. 2d 912, 917 (Miss. 1980).  To determine whether payments are made on a voluntary basis, this Court looks at the facts of each particular case. *Id.* at 917-18.

**I.     Compulsion**

¶10.    In Mississippi, "[t]o recover indemnity it is necessary for the plaintiff to allege and prove that he was legally liable to the person injured, and consequently, paid under

6

compulsion. Otherwise, the payment is a voluntary one for which there can be no recovery." ***Sw. Miss. Elec. Power Ass'n v. Harragill***, 254 Miss. 460, 182 So. 2d 220, 223 (1966). The first question certified to this Court asks whether an insurer acts under "compulsion" if it takes the legal position that an entity purporting to be its insured is not covered by its policy, but nonetheless pays a settlement demand in good faith to avoid potentially greater liability that could arise from a future coverage determination.

¶11.     Colony argues that, because it had an interest to protect when it made the settlement payment, it paid under compulsion no matter the extent or quantity of its interest. In contrast, First Specialty contends that "compulsion" requires more than a potential lawsuit against the payor or the payor's perception of potential liability if it does not make the subject payment. It argues that compulsion requires "urgent and immediate circumstances" in which the failure to pay risks severe consequences to the payor or threatens the payor's financial viability.

¶12.     We answer the first certified question in the negative. As First Specialty argued, Colony maintained from the beginning that it did not insure Omega. Colony argued that its policy did not cover Omega for two reasons. First, Colony argued that a provision in its policy excluded the injuries suffered by Taylor from coverage. Colony's policy included a "Total Pollution Exclusion" which stated,

> This insurance does not apply to:
>
> **f. Pollution**
>
> **(1)** 'Bodily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal,

seepage, migration, release or escape of 'pollutants' at any time . . .

Its policy defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant[.]" Colony argued that it was not obligated to defend Omega because Taylor's death was caused by "the ignition of several combustible gases" contained within a tank that had an approximately twenty thousand pound lid. Colony argued that for the lid to have blown off the tank, seepage or release of the contained gasses, which constituted pollutants had to have occurred.

¶13.    Second, Colony argued that Omega was not considered an "additional insured" under its policy. Pursuant to the policy, an "additional insured" was defined as

> the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

Accordingly, Colony contended that a person or entity may only be an additional insured for bodily injury caused in whole or in part by Accu-Fab's acts or omissions or by acts or omissions of someone acting on behalf of Accu-Fab. Colony argued that because the policy specifically stated "liability . . . caused, in whole or in part, by," it required that the underlying complaint allege that the named insured (Accu-Fab) or someone acting on behalf of Accu-Fab was negligent and proximately caused the injury. Because Taylor did not

8

include Accu-Fab as a party or allege any negligence or fault on its part, Colony argued that Omega was not an additional insured. Therefore, when Colony negotiated the settlement payment, Colony did not merely dispute that its policy excluded coverage for the injuries Taylor suffered, but it maintained that it did not insure Omega at all. Colony's fear that Omega *might* be an additional insured under its policy does not amount to compulsion.

¶14.    Black's Law Dictionary provides two definitions of the word "compel": 1) "to cause or bring about by force, threats, or overwhelming pressure" or 2) "to convince (a court) that there is only one possible resolution of a legal dispute." *Compel*, Black's Law Dictionary (10th ed. 2014). Previously, this Court has found that a threat to sue is not considered compulsion. *McLean*, 157 So. at 362. In *McLean*, a milling company was indebted to a bank in the total amount of $79,540.40. Ten stockholders guaranteed the notes and secured the notes with collateral. *Id.* at 361. When the milling company was thrown into bankruptcy, the bank demanded that the ten guarantors pay the entire balance without applying the collateral to the reduction of the stated balance. *Id.* The ten stockholders paid the full balance. When the collateral was sold, the stockholders sought to be reimbursed. *Id.* at 362. This Court found that payment of the full balance had been voluntary, holding that "the only compulsion suggested was a threat to sue, which is not compulsion." *Id.* The Court reasoned,

> It is axiomatic in equity jurisprudence that a court of equity makes no exertion to extend relief to those who, being able to take care of their interests, have neglected to do so, and thereupon find themselves in predicaments which ordinary care would have avoided. And for the stronger reason, where an unjust demand has been made upon a party, a demand for a debt which he does not owe, or for more than he owes, he must, when he knows or ought to know

9

the facts, avail of the means which the law affords him to resist the demand, and if he do not, and make the payment demanded, he has not taken due care.

*Id.*

¶15.   Even the possibility of foreclosure on a deed of trust for land has been found to lack compulsion for purposes of the voluntary-payment doctrine. ***Rowe v. Union Cent. Life Ins. Co.***, 194 Miss. 328, 12 So. 2d 431, 434 (1943). In ***Rowe***, the appellant sought recovery for a portion of the purchase price paid for farm land. *Id.* at 432. After executing a special warranty deed for more than one thousand acres of farm land, the appellant discovered that the appellee did not own all of the land specifically described in the deed of conveyance. *Id.* The appellee declined to adjust the purchase price, and the appellant continued to pay the monthly sum agreed upon in the deed of conveyance, eventually paying off the full purchase price. *Id.* at 433. The appellant wrote that the payments were "being paid under protest and without waiving any rights that the grantee may have to recover the same. . . ." This Court found that

> The mere fact, however, that she may have been compelled to resort to equity to obtain a surrender of the notes and a cancellation of the lien of the deed of trust securing the same, upon a tender of the correct amount admitted to be due, does not render her payment of the full amount an involuntary payment, and this is especially true where it was made at a time when payment of the full balance was not being demanded under penalty of immediate foreclosure, and at a time when no coercion, duress or compulsion was being employed to exact such payment, and where no fraud or concealment was being practiced by the payee in connection with the receipt, acceptance, and collection of any part of the sum so paid.

*Id.* at 434–35.

¶16.   We decline to adopt Colony's argument that a payment is not voluntary if the payor is acting under compulsion to protect its own interests. The above cases each contain payments that the payors made to protect their own interests; and yet were not considered to be made under compulsion. Additionally, Colony was not under an immediate and urgent necessity to pay the settlement demand. The explosion occurred on July 28, 2014. On April 17, 2015, Colony filed its declaratory judgment action, seeking a court order "declaring that the [Colony Policy] does not provide any coverage for any and all damages or injuries sustained as a result of the [July 2014] explosion." Taylor's estate did not file its wrongful-death action until September 2, 2015. Colony then settled the action on January 14, 2016. Thus, at the time Colony negotiated the settlement, the Taylor action had been filed only for approximately four months, and Colony's declaratory-judgment action against Omega remained pending. In civil cases, the purpose of courts is to "extend aid to those who have not been able by lawful means to aid themselves, and relief is not available to those who have neglected to take care of their interests." *Harragill*, 182 So. 2d at 223. Here, Colony had the option to pursue its declaratory-judgment action before it paid the Taylor settlement. Instead, approximately four months after the Taylor actions was filed, Colony negotiated and agreed to pay the settlement. Thus, pursuant to this Court's precedent, the Colony settlement lacked compulsion.

¶17.   Colony argues that it made "an uncommon decision in our modern litigious society" to protect and defend Omega under a reservation of rights, quoting the Court of Appeals in

11

***Gray Properties, LLC v. Utility Constructors, Inc.***, 168 So. 3d 1164 (Miss. Ct. App. 2014). In ***Gray Properties***, however, the issue of compulsion was not discussed. And although Colony argues that it was under a "solemn obligation to defend its insured," as discussed above, Colony continually maintained that Omega was not its insured. "An insurance company's duty to defend *its insured* is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, *no duty to defend arises when the claims fall outside the policy's coverage*." ***Minn. Life Ins. Co. v. Columbia Cas. Co.***, 164 So. 3d 954, 970 (Miss. 2014) (emphasis added) (quoting ***Baker Donelson Bearman & Caldwell, P.C. v. Muirhead***, 920 So. 2d 440, 450-51 (Miss. 2006)).

¶18. The critical distinction in this case is that if Colony continually maintained that it was not Omega's insured, Colony did not act out of compulsion when it negotiated the settlement. Because Colony failed to pursue its legal remedies, we answer the first certified question in the negative.

## II. Legally Liable

¶19. Because the first question is dispositive for purposes of the voluntary-payment doctrine, we find it unnecessary to answer the second certified question.

## CONCLUSION

¶20. We find that an insurer does not act under compulsion if it takes the legal position that an entity purporting to be its insured is not covered by its policy but nonetheless pays a

settlement demand in good faith to avoid potentially greater liability that could arise from a future coverage determination. Because the first certified question is dispositive, we decline to address the second certified question.

¶21. **CERTIFIED QUESTION NO. 1: ANSWERED. CERTIFIED QUESTION NO. 2: DECLINED.**

**RANDOLPH AND KITCHENS, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**