# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-01097-SCT

*OMEGA PROTEIN, INC.*

*v.*

*EVANSTON INSURANCE COMPANY*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2020 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| TRIAL COURT ATTORNEYS: | MARK D. MORRISON |
| | FREDRICK B. FEENEY, II |
| | SUSAN F. E.  BRUHNKE |
| | NATHAN L. BURROW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FREDRICK B. FEENEY, II |
| | SUSAN F. E.  BRUHNKE |
| ATTORNEYS FOR APPELLEE: | ROBERT DOUGLAS MORGAN |
| | BENJAMIN COLLIER LEWIS |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 03/31/2022 |
| MOTION FOR REHEARING FILED: | 02/03/2022 |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted.

¶2.     On the morning of Monday, July 28, 2014, an explosion occurred at the facility of Omega Protein, Inc., in Moss Point, Mississippi.  The explosion killed one man and seriously injured several others.  Multiple lawsuits were filed against Omega in the United States

District Court for the Southern District of Mississippi in Gulfport. Colony Insurance Company filed a declaratory judgment action in Jackson County Circuit Court seeking a declaration that it did not cover bodily injuries arising out of the Moss Point facility explosion. Evanston Insurance Company intervened also seeking a declaration of no coverage for the same injuries. Evanston provided a $5 million excess liability policy, which provided coverage after Colony's $1 million policy was exhausted. Because Colony settled one of the underlying personal injury cases for $1 million (the limits under its policy), Omega sought excess coverage from Evanston for the injuries that occurred at its plant. A special master was appointed, and the trial court granted Evanston's motion for summary judgment, finding that the pollution exclusion in the insurance contract barred coverage. Omega and Evanston appealed the grant of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶3. Omega Protein, Inc., entered into a master service contract with Accu-fab and Construction, Inc., to perform welding and other fabrication work at their facility in Moss Point, Mississippi. According to the Master Service Contract, Accu-fab was required to have commercial general liability insurance that named Omega as additional insured. Accu-fab purchased a $1 million primary policy issued by Colony Insurance Company and a $5 million excess policy issued by Evanston Insurance Company.

¶4. Per the agreement between Omega and Accu-fab, Accu-fab was to perform welding and other fabrication work on a large metal storage tank used for the temporary storage of stickwater. Stickwater is a liquid composed of water, fish oil, and fish solids. On July 28,

2

2014, an explosion occurred at the Omega plant while certain Accu-fab workers were welding and grinding on a large metal tank that was used for the temporary storage of stickwater. As a result of the explosion, one of Accu-fab's workers, Jerry Lee Taylor, II, was killed, another was seriously injured, and others suffered less serious injuries.

¶5. Taylor's estate sued Omega alleging that the explosion was caused by the ignition of explosive gases inside the stickwater storage tank. Omega tendered defense and indemnity of Taylor's estate's lawsuit to Colony, as primary insurer, and Evanston, as following-form excess insurer. Colony filed the instant declaratory judgment action, seeking a declaration of no coverage for bodily injury based on the pollution exclusion in its policy. Evanston intervened and denied coverage based on, among other things, the substantially similar pollution exclusion in its own policy. Omega and Taylor's estate settled, and Colony contributed $1 million, an amount equal to the applicable policy limits.

¶6. In the declaratory judgment action, Omega filed motions for partial summary judgment, alleging that the pollution exclusion did not apply and that the primary non-contributory clause was ambiguous and thus inapplicable to Omega in connection with the explosion. Evanston also filed a motion for summary judgment, arguing that Omega was not an additional insured under the Colony policy and, therefore, likewise was not an additional insured under the excess policy issued by Evanston. Evanston further argued that Omega was not entitled to indemnity because there were no factual allegations of negligence against Accu-fab in the underlying cases and also because its own pollution exclusion barred Omega's claims.

3

¶7. Robert L. Gibbs was appointed as special master in the case to address the motions for summary judgment and recommended that the trial court find that coverage was barred under the pollution exclusion and that Omega qualified as additional insured under the policy in addition to Evanston's coverage's being triggered by the $1 million payment by Colony. The trial court granted Evanston's summary judgment motion. Omega appealed, and Evanston cross-appealed.

## STANDARD OF REVIEW

¶8. The Court reviews *de novo* a grant or denial of summary judgment. ***Venture, Inc. v. Harris***, 307 So. 3d 427, 431 (Miss. 2020) (quoting ***Double Quick, Inc. v. Moore***, 73 So. 3d 1162, 1165 (Miss. 2011)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue [as to] any material fact and that the moving party is entitled to a judgment as a matter of law.'" ***Id.*** (quoting Miss. R. Civ. P. 56(c)).

## DISCUSSION

I. **Whether the trial court erred by finding that the pollution exclusion contained in the insurance policy issued by Evanston applied.**

¶9. Omega contends that the trial court erred by adopting the findings of Special Master Robert Gibbs. Gibbs found that the pollution exclusion contained in the insurance policy issued to Accu-fab by Evanston applied to bar coverage of the personal injury claims arising from the July 2014 explosion. The Evanston pollution exclusion at issue states in relevant part:

This policy shall not apply:

4

1. To "Ultimate Net Loss":

a. arising out of or contributed to in any way by the actual, alleged or threatened discharge, dispersal, release, migration, escape, or seepage of pollutants. . . . As used in this exclusion, pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes material, to be recycled, reconditioned, reclaimed or disposed of.

¶10.    When reviewing an insurance policy, the Court's role is "to render a fair reading and interpretation of the policy." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (citing *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004)).  More importantly, "[l]anguage in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted." *Id.* at 615 (quoting *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)).  Additionally, limitations or exclusions on coverage must be construed in favor of the insured and against the insurer. *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998).

¶11.    Further, "[i]f a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party.  Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010) (quoting *Martin*, 998 So. 2d at 963).  When ambiguities are at play in an insurance contract, we ask "what a reasonable person . . . in the insured's position would have understood the terms to mean." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998).

¶12.    Although the definition of "pollutants" under the policy includes "irritant or contaminants," the pollution exclusion does not define "irritant or contaminant." Stickwater is a byproduct of the fish meal and fish oil production process.  The stickwater in tank number 10 produced methanethiol, hydrogen sulfide, and methane–all three of which are extremely flammable and are produced by the decomposition of organic matter.  Hydrogen Sulfide ($H_2S$) is listed on the Center for Disease Control (CDC) website as "a highly toxic gas that can produce extremely rapid [central nervous system] and respiratory depression. It is also an irritant affecting skin and mucous membranes."  Agency for Toxic Substances & Disease Registry, *Hydrogen Sulfide ($H_2S$)*,  https://www.atsdr.cdc.gov/mhmi/mmg114.pdf (last visited Dec. 8, 2021).  Likewise, methanethiol, also known as methyl mercaptan is listed on the CDC website as "highly irritant when it contacts moist tissues such as the eyes, skin, and upper respiratory tract. It can also induce headache, dizziness, nausea, vomiting, coma, and death."  Agency for Toxic Substances & Disease Registry, *Methyl Mercaptan ($CH_3SH$)*, https://www.atsdr.cdc.gov/MHMI/mmg139.pdf (last visited Dec. 8, 2021).   Both of the definitions require contact with mucous membranes or inhalation to become an irritant.

¶13.    Omega asserts that the gasses emitted from the stickwater tank are not irritants or contaminants because they are found naturally, albeit in small quantities, in the ambient air. Thus, Omega contends, they cannot be pollutants.  It further argues that the gasses in the stickwater tank were not irritants or contaminants as defined under the pollution exclusion since they were properly contained within the tank and were not contacting, contaminating,

6

or irritating anything. Evanston argues that gasses emitted from the tank fit squarely within the pollution exclusion language.

¶14. The Oxford English Dictionary defines "irritant" as an "irritant substance, body or agency; a poison, etc. which produces irritation; and anything that stimulates an organ to its characteristic vital action." *Irritant*, The Oxford English Dictionary (2d ed. 1989). It defines "contaminant" as "that which contaminates." *Contaminant*, The Oxford English Dictionary (2d ed. 1989). More helpful is the definition of "contaminate" provided by the dictionary as "to render impure by contact or mixture; to corrupt, defile, pollute, sully, taint, [or] infect. *Contaminate*, The Oxford English Dictionary (2d ed. 1989).

¶15. The words "irritant" and "contaminant" are subject to more that one meaning under the pollution exclusion. On one hand a substance can be an irritant or contaminant at its core and by its very nature. That substance is an irritant or a contaminant no matter where it is, how it is contained, or whether it is in contact with something actively irritating or contaminating it. On the other hand, pursuant to the above-cited definitions, a substance is not necessarily an irritant or contaminant until it comes into contact with something and is actively irritating or contaminating it. For example, crude oil inside a large tanker is a contaminant by its very nature. Though it is contained inside the tanker, were it to come into contact with the water or wildlife, it would contaminate them immediately. The potential a substance has to contaminate makes the substance a contaminant by its nature, no matter where it is located. It can also be said that the same crude oil under the same set of facts is not a contaminant because it is located inside an inert container within the ship and is not in

7

contact with anything. In that context, that crude oil it is not a contaminant because it is not actively contaminating something.

¶16. The pollution exclusion at issue is susceptible to more than one reasonable interpretation and, therefore, is ambiguous. Accordingly, it must be construed in favor of coverage in accordance with *Architex* and *Martin*. The trial judge, therefore, erred by adopting the special master's finding that the pollution exclusion applied.

> II. **Whether the trial judge erred by adopting the special master's finding that coverage was triggered under Evanston's policy of excess liability insurance.**

¶17. On cross-appeal, Evanston argues that coverage of Omega should not have been triggered under the insurance contract at all. Evanston relies solely on the Mississippi Supreme Court's recent opinion in *Colony Insurance Co. v. First Specialty Insurance Corp.* However, Evanston's reliance is misplaced. In *Colony*, the Court simply answered a certified question from the United States Court of Appeals for the Fifth Circuit; the question was whether the payment Colony Insurance made was voluntary or whether it was compelled to do so. *Colony Ins. Co. v. First Specialty Ins. Corp.*, 262 So. 3d 1128, 1135 (Miss. 2019).

¶18. In *Colony*, Colony Insurance Company, a primary insurer of Accu-fab, negotiated and paid a settlement for the wrongful death claim that had arisen from the July 2014 explosion at Omega's Moss Point facility. *Id.* at 1131. Colony filed a declaratory judgment action in the Circuit Court of Jackson County, Mississippi, seeking an order declaring that Colony's policy did not provide coverage for any of the damages or injuries sustained as a result of the July 2014 explosion. *Id.* at 1130. Colony demanded that First Specialty Insurance

8

Corporation, the excess liability policy issuer, reimburse the full amount Colony contributed to the wrongful death settlement. *Id.* at 1131. When First Specialty refused, Colony filed an action against it seeking reimbursement of the amount it had contributed to the settlement of Taylor's estate's wrongful death lawsuit against Omega. Colony asserted claims of equitable subrogation and implied indemnity. *Id.* Of import here, *Colony* involved two insurance companies litigating equitable subrogation and implied indemnity causes of action. *Id.*

¶19. The case at bar, while arising out of the same series of unfortunate events, is distinguishable from the Court's *Colony* opinion in that it is a question of whether there is coverage under the excess insurance contract. It is not an action between two insurance companies sounding in equitable subrogation and implied indemnity. Evanston relies on the holding in *Colony* to support the claim that Colony, the primary insurer, voluntarily paid the policy limit on behalf of Omega in defense of the claims from Taylor's estate. Evanston argues that a voluntary payment, as opposed to a compulsory one, indicates there is no liability on behalf of Accu-fab, so the excess coverage policy was not triggered. However, the court's decision in *Colony* is not applicable. No determination of liability was made in *Colony,* and the voluntary payment has no bearing on the analysis here.

¶20. The trial court erred by finding that coverage was triggered because there has been no showing of negligence on behalf of Accu-fab. In Mississippi, insurance policies "are contracts, and as such, they are to be enforced according to their provisions." *Corban*, 20 So. 3d at 609. Thus, the coverage issue pled will be determined by the language of the policy.

9

The Evanston excess policy states that Evanston "agrees to pay on behalf of the Insured that portion of Ultimate Net Loss in excess of the limits of the Underlying Insurance" and will provide coverage to additional insureds "to the extent of their liability due to the negligence of the Named Insured." The trial court relied on the special master's finding that the voluntary payment from Colony and the language and the nature of the policy showed that coverage should be triggered. However, this Court finds that the excess policy cannot be triggered without the exhaustion of the underlying insurance policy and a showing of negligence from Accu-fab. As the parties have agreed there has been no adjudication of fault or negligence attributed to Accu-fab, there can be no finding that the policy was triggered. The trial court erred by determining that the excess policy was triggered without first determining if there was liability on behalf of Accu-fab.

### III. Whether the trial judge erred by adopting the special master's finding that Omega qualified as an additional insured under Evanston's policy of excess liability insurance.

¶21. Also on cross-appeal, Evanston contends that Omega should not have qualified as an additional insured under the insurance contract. Evanston provided an excess insurance policy to Accu-fab that provided $5 million of coverage if and when the $1 million policy issued by Colony was exhausted. Accu-fab was the named insured on both policies, not Omega. However, per the master service contract between Accu-fab and Omega, Omega was required to be listed as an additional insured on the insurance policies that Accu-fab was contractually required to take out. Item 4 of the insurance contract is titled "Schedule of Underlying Insurance" and clearly lists the Colony policy held by Accu-fab. The Colony

10

policy contained a schedule entitled "ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION." The schedule listed additional insured as "All persons or organizations as required by written contract with the Named Insured." Thus, subject to a determination of negligence on Accu-fab's part, under the contract, Omega could qualify as an additional insured.

¶22. The excess policy issued by Evanston also contains a provision that states the policy will "follow form over Additional Insureds covered in the Controlling Underlying Insurance to the extent of their liability due to the negligence of the Named Insured." Thus, for the excess policy to afford coverage to Omega, there must be a determination that Omega has incurred liability on behalf of negligence attributed to Accu-fab. There was never any adjudication made regarding negligence of Accu-fab. Indeed, the parties acknowledge that lack of a negligence determination in their briefs.

¶23. However, since the underlying lawsuit in the appeal before the Court is a declaratory judgment action filed by Colony in which Evanston intervened, and Evanston is the party seeking a declaratory judgment on the issue, it has assumed the burden of proof. "The movant has the burden of showing no genuine issue of material fact exists, giving the non-movant the benefit of the doubt as to the existence of any genuine issues of material facts." *Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1007 (Miss. 2006) (citing *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996)). Because there has been no adjudication of fault or negligence attributed to Accu-fab, Evanston has failed to prove that Omega was not covered under the excess liability policy issued by Evanston. Likewise, due to this same lack

of a fault adjudication, the trial court erred by summarily finding that Omega qualified as additional insured under the excess liability policy issued by Evanston.

## CONCLUSION

¶24.    Because the pollution exclusion in the insurance contract was ambiguous, it must be construed against the insurer and in favor of the insured, allowing coverage. Further, we find the question of whether coverage was triggered is governed by the language of the contract and that Evanston has failed to prove there could be no coverage under the excess liability policy.  Also, as there has been no determination of liability on behalf of Accu-Fab, the trial court erred by summarily finding that Omega is an additional insured.  Therefore, we reverse the trial court's grant of summary judgment as to all issues and remand the case for further proceedings.

¶25.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**